HAROLD E. DEFRIES *v.* STATE OF INDIANA.

[No. 3-574A73. Filed December 19, 1974. Rehearing denied February 4, 1975.]

*Ralph Bower, Stephen Bower,* of Kentland, for appellant.

*Theodore L. Sendak,* Attorney General, *Robert E. Dwyer,* Deputy Attorney General, for appellee.

HOFFMAN, C.J.—This appeal arises from a judgment of conviction entered against appellant Harold E. Defries (Defries) upon a charge of aggravated assault and battery. Following trial by a jury, Defries was sentenced to a term of imprisonment for not less than one nor more than five years. Upon the overruling of appellant's motion to correct errors, he perfected this appeal.

The facts and inferences most favorable to the State in the record establish that at approximately 10:30 P.M. on the night of June 9, 1973, appellant Defries was driving south on Weston Street in a residential area in Rensselaer, Indiana, at a high rate of speed and in an intoxicated condition. At this time, a group of children were playing in or

near the west lane of Weston Street south of its intersection with Oak Street; due to a street light at the intersection, the children were visible from a distance of one block. As Defries approached the intersection from the north, he was seen by Jim Osborn (Osborn), who was approaching the intersection on Oak Street. Defries then failed to stop at the intersection, thereby obliging Osborn to stop to avoid him.

One of the group of children, Jerry Justice (Jerry) had decided a few moments before Defries' arrival at the intersection to leave the group of children, and had crossed to the east side of Weston. Jerry's 9-year old sister Rhonda, then apparently decided to follow him across the street. When she crossed the street, Rhonda placed herself in the path of Defries' car as it sped through the intersection straddling the center line. Defries skidded approximately sixty-eight feet before striking Rhonda and throwing her an additional sixty-seven feet from the point of impact. In all, Defries' vehicle skidded ninety-six feet before stopping. His speed as he traveled through the intersection was estimated at from 50 to 60 miles per hour.

After striking Rhonda, Defries stopped momentarily, turned his headlights off, and then proceeded south to the point where she had come to rest upon the pavement. Defries then hastily left the area and returned to his home, whereupon he picked up a neighbor and returned to the scene of the injury. Once back at the scene, Defries advised Police Officer Robert R. Duncan, "I'm the one, I hit her", and was placed under arrest.

On appeal, Defries first challenges the adequacy of the affidavit under which he was charged. This question was presented to the trial court in a motion to quash,[1] and has been properly preserved for appeal.

---

1. The function of the former motion to quash is now fulfilled by the motion to dismiss, under new provisions of the Indiana Code enacted in 1973. See: IC 1971, 35-3.1-1-4, Ind. Ann. Stat. § 9-906 (Burns 1974 Supp.) and IC 1971, 35-3.1-1-8, Ind. Ann. Stat. § 9-910 (Burns 1974 Supp.).

The standards of specificity of indictments and charging affidavits in effect at the time the appellant herein was charged, and the reasons therefor, are well stated in *Blackburn* v. *State* (1973), 260 Ind. 5, 291 N.E.2d 686 at 690:

"In this state, the offense charged in the indictment must be stated with such certainty that the accused, the court, and the jury may determine the crime for ▪ which conviction is sought. IC 1971, 35-1-23-25 [Burns Ind. Stat. Ann. § 9-1126 (1956 Repl.)]; Thomas v. State (1968), 251 Ind. 76, 238 N.E.2d 20; rehearing denied; *See also* Noel v. State (1966), 247 Ind. 426, 215 N.E.2d 539, rehearing denied. The defendant must be given sufficient information to enable him to prepare his defense and to assure that he will not twice be put in jeopardy for the same crime. Ind. Const. art. I, § 13; *See* State v. Brown (1935), 208 Ind. 562, 196 N.E. 696. However, certain details may be omitted and a motion to quash may properly be denied unless the indictment is so uncertain and indefinite that the nature of the charge cannot be ascertained. IC 1971, 35-1-23-26 [Burns Ind. Stat. Ann. § 9-1127 (1956 Repl.)] Kennedy v. State (1935), 209 Ind. 287, 196 N.E. 316 rehearing denied."

The affidavit in question charges Defries with the crime of aggravated assault and battery substantially in the language of the statute, IC 1971, 35-13-3-1, Ind. Ann. Stat. § 10-410 (Burns Supp. 1974), while also alleging the identity of the victim and the date of the offense. It is appellant's contention that the gravamen of the offense is that Defries operated a motor vehicle in such a wanton and reckless manner that his aggravated injury of another in so doing may be deemed willful. Appellant further asserts that because the crime involves the reckless operation of a motor vehicle, the affidavit must contain:

"[s]pecific allegations of what facts exist which make it appear that the injury (or death) was due to the reckless disregard of the safety of others." Appellant's brief, p. 19.

However, the authorities cited by appellant in support of this contention are inapposite in that they pertain to the

crimes of reckless homicide and involuntary manslaughter. It is true that the unlawful act or act of reckless driving which proximately caused a death must be alleged in an affidavit charging involuntary manslaughter or reckless homicide because the existence of a proximate relationship between such acts and a death is the gist of these crimes as delineated by their respective statutes. In contrast, the gist of the offense of aggravated assault and battery as delineated by IC 1971, 35-13-3-1, *supra,* is the willful, unlawful infliction of great bodily harm and disfigurement upon another. The affidavit here at issue stated these elements of the offense plainly and with certainty.

Appellant's contention on this point must be considered to be that because the State intended to prove his criminal intent by inference from certain of his reckless acts, he is entitled to be advised of such acts through the affidavit by which he is charged. Such contention is erroneous. The existence of criminal intent as a state of mind in an actor is an ultimate fact which may be inferred by the trier of fact from the circumstances surrounding an act as revealed by the evidence. See: *Farno* v. *State* (1974), 159 Ind. App. 627, 308 N.E.2d 724, and cases cited therein. However, the evidentiary facts from which such ultimate facts must be proved need not be alleged in an indictment or affidavit. *State* v. *Schell* (1967), 248 Ind. 183, 224 N.E.2d 49. Therefore, the omission from the charging affidavit herein of the specific acts from which the appellant's intent was inferred by the trier of fact cannot be regarded as improper. Furthermore, Defries has not demonstrated any prejudice to his rights or his defense by reason of such omission to the trial court, in his briefs to this court, or upon oral argument.

The next issue which must be considered is whether the trial court erred in overruling appellant's motion for mistrial made following a reference by a witness to a breathalyzer test. Defries made a pretrial motion in limine, which was granted by the trial court, prohibiting, in part, reference to

his refusal to submit to a breathalyzer test. The testimony objected to occurred during the State's case-in-chief as follows:

"Q   Could you tell the, the jury how you came into contact with the defendant, or where you came in contact with him?

"A   Yes, sir. I came in contact with the, with Mr. Defries at the office of the County Jail. And prior to that I had been on patrol and I was contacted by the Dunes Park Post to go to the jail that there had been a request for a breathalizer operator—

"MR. BOWER: To which I object and move that the counsel be instructed that there is a motion and that he has invaded by this witness and this Court to the prejudice of this defendant. I not only move that the conduct of the counsel but also of the witness, and that the jury be instructed and also request a mistrial.

"THE COURT: Will counsel approach the bench?
(Counsel and the Court having a discussion at the bench.)

"THE COURT: The objection is sustained and motion denied."

Inasmuch as the appellant's motion in limine requested only that the State not offer evidence "[t]hat the defendant refused to submit to a breathalyzer", it is difficult to perceive how the above quoted testimony invaded the trial court's order thereon. The substance of the testimony admitted was that the officer came into contact with Defries when he came to the jail following a request for a breathalyzer operator. Surely the jury could not have concluded from this statement that the appellant refused to submit to a breathalyzer test. Additionally, it must be noted that there is substantial eyewitness testimony herein showing appellant's intoxication following the injury.

The granting or denial of a motion for mistrial rests within the sound discretion of the trial court, and its ruling will be overturned only upon a showing of abuse of that discretion. *Prather* v. *State* (1973), 158 Ind. App. 61, 301 N.E.2d 667. And, this question must be de-

cided upon the facts of each case. *White* v. *State* (1971), 257 Ind. 64, 272 N.E.2d 312. In view of the very slight, or more probably nonexistent, effect of the testimony in question upon the jury, it cannot be said that the trial court abused its discretion in failing to grant appellant's request for a mistrial. Additionally, assuming arguendo, that an error was committed by the trial court, we would be compelled to conclude that the error was harmless.

The third issue which must receive consideration herein involves the appellant's lack of a valid driver's license at the time of the injury. An additional portion of appellant's motion in limine requested the trial court to proscribe references to the fact that appellant's driver's license was suspended. The trial court denied this portion of such motion and later admitted testimony that when Defries was asked to produce a driver's license at the sheriff's office, he could not do so.

While the appellant's inability to produce a license at that time is immaterial with respect to the issue of the existence or degree of his recklessness, for which it must have been offered, it must be concluded that the admission of this evidence was harmless error. The State did not attempt to show that his license had been suspended, nor that he had previously committed arguably reckless criminal acts resulting in the suspension. Rather, it was only shown that he did not produce a license at a particular time. This equivocal evidence could not have prejudiced the appellant by contributing to the verdict and, thus, cannot warrant reversal. *Mitchell* v. *State* (1972), 259 Ind. 418, 287 N.E.2d 860; *Keesier* v. *State* (1900), 154 Ind. 242, 248, 56 N.E. 232.

Appellant's next two assertions of error both involve the sufficiency of the evidence herein to support his conviction and, therefore, will be treated together.

It is to be noted that when questions concerning the sufficiency of evidence are presented on appeal, this court may

consider only that evidence which is most favorable to the State, together with all logical and reasonable inferences which may be drawn therefrom. Further, it is not our function to weigh the evidence or determine the credibility of witnesses. *McAfee* v. *State* (1973), 259 Ind. 687, 291 N.E.2d 554. It has been held that a conviction may be sustained upon circumstantial evidence alone so long as the evidence is of such probative value that a reasonable inference of guilt may be drawn therefrom. *Gregory* v. *State* (1972), 259 Ind. 295, 286 N.E.2d 666. A conviction which rests in whole or in part upon such evidence will not be reversed unless this court can state as a matter of law that reasonable persons, whether they be the jury or the trial court, could not form inferences with regard to each material element of the offense so as to ascertain a defendant's guilt beyond a reasonable doubt. *Guyton* v. *State* (1973), 157 Ind. App. 59, 299 N.E.2d 233.

The elements of aggravated assault and battery as stated in IC 1971, 35-13-3-1, *supra,* are an intentional and unlawful infliction of great bodily harm upon another. *Priola* v. *State* (1973), 260 Ind. 117, 292 N.E.2d 604. The record clearly discloses that great bodily harm was inflicted upon Rhonda Justice. Officer Robert Duncan stated that upon arriving at the scene of the injury, he observed that Rhonda had a "serious head wound." Furthermore, the physician who examined Rhonda upon her arrival at the Jasper County Hospital emergency room found "a large jagged laceration of the forehead" as well as a "fracture of the femur." Clearly this evidence is sufficient to permit the trier of fact to find that great bodily harm was inflicted upon her. *Priola* v. *State, supra.*

As to the intent necessary to sustain appellant's conviction, it must be noted that our Supreme Court has allowed intent to commit assault and battery to be inferred in similar circumstances. See: *Bleiweiss* v. *State* (1918), 188 Ind. 184, 119 N.E. 375. The holding on this point in *Bleiweiss* is well

explained in *Radley* v. *State* (1926), 197 Ind. 200, at 203-204, 150 N.E. 97, at 98, as follows:

"The intent to touch unlawfully may be inferred from the intentional doing of an act the probable result of which will be a rude or insolent touching of the person of another. Thus, if a man should intentionally drive his car into a crowd of people in the street at such a rate of speed that it was not probable they would all get out of the way, and thereby should drive over or against any of them, the inference that he intended to strike somebody with his car could reasonably be drawn from the fact that he intentionally drove into the crowd in that manner. *State* v. *Schutte* (1915), 88 N.J. Law 396, 96 Atl. 659.

"And the fact that a person intentionally drove his automobile at an unlawful rate of speed along a city street across an intersecting street on which there was much travel, and past what he 'knew was a very dangerous corner,' and in passing the corner ran against a motorcycle on the cross street, was held to support an inference of unlawful intent in striking the driver of the motorcycle. *Bleiweiss* v. *State* (1918), 188 Ind. 184, 119 N.E. 375, 122 N.E. 577. But, while there may be a civil liability for damages caused by an unlawful striking, whether the act was done wilfully or negligently, there can be criminal responsibility only where it was done intentionally. [Citation omitted.] And an intent to injure may not be inferred from a lack of ordinary care, nor will mere proof of a negligent touching or striking support an inference that the negligent act was done with unlawful intent. [Citations omitted.] To create a civil liability there need be nothing more than a lack of ordinary care, which causes an injury to another. But to make one criminally responsible for such an injury there must be wilful, intentional conduct, whose tendency to injure is known, or ought to be known, accompanied by such wanton and reckless disregard of the probable harmful consequences to others as to imply the infliction of a wilful, intentional injury. *Luther* v. *State*, *supra*, on page 626 [(1912), 177 Ind. 619, 98 N.E. 640]; *Dunville* v. *State* (1919), 188 Ind. 373, 379, 123 N.E. 689."

The evidence herein that appellant drove his automobile through a stop sign at 50 to 60 miles per hour in an intoxicated state, toward a group of children visible for a distance of one block, while forcing an automobile on an intersecting

street to stop to avoid him shows his reckless disregard of the probable harmful consequences to others while he intentionally committed acts which had a known tendency to injure. Accordingly, the jury's finding that appellant had the requisite intent may not be disturbed by this court.

The final issue presented by appellant concerns the propriety of the trial court's refusal to give his Tendered Instruction No. 8 to the jury. The instruction stated, in essence, that mere inadvertence in appellant's driving would not support a conviction of aggravated assault and battery. Even assuming, without deciding, that such an instruction was required in this case, the substance of appellant's instruction was covered by the following portions of the court's Final Instruction No. 8:

> "You are further instructed that to find the defendant guilty of aggravated assault and battery or assault and battery there must be evidence of criminal intent. But the intent may be inferred from the circumstances which legitimately permit it. *Intent to injure may not be implied from a lack of ordinary care. * * *.*
> "Such circumstances *must show* there was willful, intentional conduct whose tendency to injury (sic) is known, or ought to be known, accompanied by a wanton and reckless disregard of the probable harmful consequences from which others are likely to suffer, *so that the whole conduct together is one of the nature of a willful, intentional wrong.*" (Emphasis supplied.)

Thus, this allegation of error cannot warrant reversal. *Martin* v. *State* (1973), 260 Ind. 490, 296 N.E.2d 793.

No reversible error having been shown, the judgment of the trial court must be affirmed.

Affirmed.

Garrard and Staton, JJ., concur.

NOTE.—Reported at 319 N.E.2d 837.

### ON PETITION FOR REHEARING

HOFFMAN, J.—This cause is pending before the court on appellant's petition for rehearing. One portion of such petition

questions whether certain facts stated by the court in its opinion are supported by the record herein.

The court has examined each of such allegedly erroneous statements of fact, and finds that the record herein supports each as a statement of the facts and reasonable inferences therefrom most favorable to appellee-State of Indiana.

Defries' preliminary contention is that the court erred in stating,

"Defries then failed to stop at the intersection, thereby obliging Osborn to stop to avoid him."

On direct examination Jim Osborn, a witness for the State, testified:

". . . I was driving but then when I seen (sic) this other car coming there was, there was a stop sign on his street but he didn't stop so I stopped. . . ." (Transcript page 186, lines 4-6.)

Appellant's next contention is that the court erroneously stated,

"Defries' auto as it sped through the intersection [was] straddling the center line."

Officer Robert R. Duncan testified, on direct examination, that "the skid marks" made by Defries' automobile "straddle[d] what would be the middle of the road." (Transcript page 139, line 9.) Further testimony that Defries was "left of center" is found on page 196, line 2 of the transcript. The court did not state that Defries' vehicle was left of painted lane markings, but rather that it straddled the center line of the road.

Defries also contends that the court erroneously stated:

"Defries skidded approximately sixty-eight feet before striking Rhonda and throwing her an additional sixty-seven feet from the point of impact."

Appellant asserts that the record contains no evidence as to such distances, that the source of the court's statement was

the opening statement of an attorney, and that "perhaps the Court's staff had confused these statements with the evidence." Officer Duncan further testified, without objection, on direct examination:

> "I determined through my investigation of reference to the skid marks previously mentioned and through discussion with witnesses the approximate location of the victim when she was struck and from the blood stains determined where the victim lit (sic) on the roadway. I also measured the distances there. I measured the distances concerning the relation of the different objects involved in the accident and I found that from the starting point of the skid marks to the closest approximation that I could arrive at, the location of the victim when struck, to be approximately sixty-eight feet. And from that point of impact to the point where Rhonda Justice was found lying on the roadway was an additional sixty-seven feet." (Transcript page 139, lines 17-28; page 140, lines 1-3.)

Appellant's final contention in this regard is that the court erroneously stated that he drove his automobile through a stop sign. However, the evidence in the record before the court most favorable to the State, and the reasonable inferences therefrom, support this statement. As quoted hereinabove, witness Jim Osborn stated:

> ". . . there was a stop sign on his street but he didn't stop so I stopped . . . ." (Transcript page 186.)

On cross-examination, Osborn was shown a photograph of the intersection and street as Defries would have viewed it after traveling almost into the intersection. Osborn correctly stated that no stop sign appeared in such photograph. However, such photograph did not depict the area where a stop sign could have been located controlling traffic proceeding as Defries had. Rather, it only tended to show that there was no such sign on the opposite side of the intersection. While Osborn later testified he was unsure of the existence of the stop sign, the facts and inferences most favorable to the appellee herein support this court's statement relative thereto.

The other matters raised by appellant in his petition for rehearing merit no comment. Appellant's petition for rehearing is denied in all respects.

Petition denied.

Staton, P.J. and Garrard, J., concur.

NOTE.—Reported at 322 N.E.2d 402.