TOMMY SMITH AND MICHAEL LEAVELL *v*. STATE OF INDIANA.

[No. 2-674A132. Filed March 18, 1975. Rehearing denied
April 15, 1975.]

*Charles H. Scruggs,* of Kokomo, for appellant Smith. *Stephen Johnson,* Grant County Deputy Public Defender, for appellant Leavell.

*Theodore L. Sendak,* Attorney General, *Robert F. Colker,* Assistant Attorney General, for appellee.

LYBROOK, J.—Defendants-appellants Smith and Leavell appeal from convictions of armed robbery, raising the following issues for review:

(1) Whether the jury verdicts were supported by sufficient evidence.

(2) Whether the trial court erred in overruling defendants' motions for directed verdicts of acquittal.

(3) Whether the trial court erred in overruling defendants' motions to suppress various items of evidence.

(4) Whether the trial court abused its discretion by permitting a witness to testify that "weapons" were found in a search of defendant-appellant Leavell's residence.

The evidence most favorable to the State reveals that at approximately 8:45 P.M. on May 29, 1973, a Hook's drug store in Marion was robbed of about $647.00 by three black males wearing hoods or ladies hose over their faces and levi jackets. The men entered through the back stock room and were armed with pistols, one of which was a long-barrelled hand gun. After confronting the pharmacist, one of the men forced an employee to empty the cash from the cash register into a paper sack. The men then departed. No one at the drug store could either identify the subjects or relate how they effected their getaway.

At approximately 9:00 P.M. on the same date, Officer Mast of the Marion Police Department was informed of the drug store robbery via police radio while he was on patrol. Thirty minutes later, Mast observed a 1965 green Lincoln automobile proceeding south on Nebraska Street. Mast followed the vehicle which, according to his testimony, appeared to be occupied by two blacks, a boy and a girl sitting beside each other. Mast then engaged his flashing red light in order to

stop the car. However, the car turned onto an alley before stopping. Mast followed and observed two black men exit from the passenger side of the car and flee. A third black man, according to Mast, stood behind an open back door of the vehicle and pointed a gun at him. Thereupon, Mast assumed a prone position on the front seat of his patrol car and radioed for assistance. When Mast looked up, the subject had fled.

Shortly thereafter, Mast was joined by Officer Simpkins, also of the Marion Police Department, and the two examined the abandoned vehicle. Therein they discovered and confiscated a paper sack which bore the Hook's insignia, containing about $647.00. Mast remained with the vehicle until it could be removed, and Simpkins proceeded with the investigation.

Simpkins soon encountered a passerby, Kenneth Boyer, who related that he had seen three Negro subjects running down Nebraska Street and that one had run onto the front porch of a house located near 7th and Nebraska Streets, while another had run onto the back porch of the same house. Boyer stated that he did not know if the men had run from the alley, but rather testified that they could have come from anywhere. Another witness, Chet Parker, testified that he also saw Negro males run to the rear of 704 Nebraska Street, the premise in question.

At that time, Simpkins was joined by other police officers, and they focused their investigation upon the house at 704 Nebraska in which Leavell rented an apartment. A few minutes later, an officer Drook observed Smith crawling around the corner of the house and exclaimed "Here's one of 'em." Smith then ran across an adjacent yard, but was unable to thwart his capture.

At that time, Assistant Police Chief Whitton arrived at the scene and via a public address system ordered all persons to come out of the house. After a woman and small child had exited, tear gas was used to flush out Leavell. Thereupon,

Smith and Leavell were placed under arrest for the robbery of the drug store.

Other police officers then entered and conducted a room to room search of Leavell's apartment. In one closet, the officers found and confiscated several weapons, including one long-barrelled hand gun which was identified at trial as being similar to the one used in the drug store robbery.

Meanwhile, Mast had arranged for the abandoned vehicle, which had been determined to be owned by Smith, to be towed to a nearby garage. Although the vehicle was not accompanied by any police officers during the towing, shortly after it had been placed in the garage, Officer Greiner arrived and searched the vehicle. Greiner found two hand gunds, a brown wig and five brown ladies stockings, all of which were ultimately admitted into evidence over appellants' objections. A levi jacket and a small amount of cash were also discovered in the search.

## I.

In determining whether appellants' convictions are supported by sufficient evidence we are mindful that this court neither weighs the evidence nor resolves questions of credibility of witnesses. Rather, we consider only the evidence most favorable to the state together with all reasonable inferences which may be drawn therefrom. If, from that viewpoint, there is substantial evidence of probative value to establish every material element of the crime beyond a reasonable doubt, the verdict will not be disturbed. *Napier* v. *State* (1973), 260 Ind. 614, 298 N.E.2d 427. Further, where a conviction rests in whole or in part upon circumstantial evidence, it will not be disturbed unless this court can state as a matter of law that reasonable persons, whether they be jury or judge, could not form inferences with regard to each material element of the offense so as to ascertain defendants' guilt beyond reasonable doubt. *Senst* v. *State* (1974), 162 Ind. App. 357, 319 N.E.2d 663; *Defries* v. *State* (1974), 162 Ind. App. 531, 319 N.E.2d 837.

Examining the evidence pertaining to Leavell, we conclude that as a matter of law it is insufficient to support his conviction. The evidence neither places him at the scene of the crime, nor connects him with the abandoned automobile in which the stolen money was discovered. The evidence merely shows that Leavell was flushed from his home by tear gas and that in a subsequent search of his apartment a hand gun *similar* to one used in the robbery was found. In our opinion, this evidence together with all reasonable inferences logically flowing therefrom are clearly too remote and speculative to permit Leavell's conviction to stand.

Regarding Smith's conviction we find that the evidence was clearly sufficient to authorize the jury to find that the *corpus delecti*—that is, that the crime charged had been committed by someone—was established. See *Hunt* v. *State* (1939), 216 Ind. 171, 23 N.E.2d 681; *State* v. *Torphy* (1940), 217 Ind. 383, 28 N.E.2d 70. Additionally, the discovery in the abandoned automobile of a paper sack bearing the characteristic Hook's insignia, containing $647.00, the amount which had been stolen from the drug store, two hand guns, a brown wig, ladies hosiery, and a levi jacket, within 20 blocks of the drug store which had been robbed and less than one hour after the robbery are sufficient facts, in their cumulative effect, to justify the inference that the abandoned vehicle had been used in the perpetration of the offense charged.

Having concluded that there was sufficient evidence of the *corpus delecti* and that there was sufficient evidence to establish that the abandoned vehicle had been used in the perpetration of the offense, the only remaining essential element of the offense which the State was required to establish by competent evidence was Smith's connection with the commission of the crime. See, *State* v. *Torphy, supra*. To that end, evidence was presented which established that the vehicle which had been stopped by Officer Mast and subsequently abandoned by its three passengers was owned by Smith. The evidence further reveals that those who fled from the car ran from the alley toward Nebraska Street. Additionally, passersby on Nebraska

Street indicated that they had seen three black subjects running down the street and that the subjects ran to the residence at 704 S. Nebraska. Shortly thereafter, Smith was observed by one police officer crawling around the corner of the residence at 704 S. Nebraska, and when confronted, Smith attempted to flee. He jumped a fence and ran through an adjacent yard in an apparent attempt to avoid capture. In our opinion, this evidence is substantial evidence of probative value from which the jury could have reasonably inferred Smith's connection with the commission of the crime. Accordingly, we hold that Smith's conviction was supported by sufficient evidence.

## II.

Inasmuch as a directed verdict of acquittal is to be granted only where there is a total lack of evidence on an essential element of proof or where the evidence is without conflict and leads to but one inference and that inference is in favor of the accused, it cannot be said that, in light of the above discussion, the trial court erred in denying Smith's motion. Accordingly, we find no error under this issue.

## III.

Thirdly, appellants argue that the trial court erred in overruling their motion to suppress with respect to the items seized from Smith's car. Specifically, appellants maintain that Officer Mast was acting without probable cause when he initially engaged his flashing red light in order to stop Smith's car.

At the evidentiary hearing on the motion to suppress, testimony revealed that one week prior to the offense for which appellants were convicted, four black male subjects presented themselves at another drug store in Marion shortly after it had been closed for the evening and indicated their desire to purchase cigarettes. The subjects, after being notified by the proprietor that the store had been closed for the evening, attempted to enter through the side door. It was locked. The

men then exchanged gunfire with the proprietor and fled. One witness indicated that he had seen two blacks drive off at a high rate of speed in a 1965 brown Chevrolet. Another witness, however, informed the police that she had seen four black subjects jump into a green Lincoln and drive from the scene. This information was broadcast over police radios. Shortly thereafter, the manager of an auto parts store in Marion telephoned the police and indicated that approximately twenty minutes before the above described "shoot-out" at the drug store, four black males driving a 1965 green Lincoln had entered his store. Three of them, according to the manager, sauntered around the store in a suspicious manner while the fourth stood by the door. Then, one of them approached the cash register and apparently attempted to purchase a fuel pump. However, at that time a customer entered the store and the subject who had been at the door nodded his head and they all departed without completing the transaction. The proprietor procurred the license plate number on the green Lincoln in which the four subjects left and provided this information to the police. Thereupon, the license number was traced and found to be registered to a 1965 green Lincoln owned by Smith. Acting on this information, a surveillance on the car was initiated and all police officers were instructed to stop this car and investigate in the event of a subsequent "hold-up." One week later, on the evening of May 29, 1973, Officer Mast, after learning of the drug store robbery earlier in the evening, observed the 1965 green Lincoln owned by Smith being driven in the neighborhood of the robbery and attempted, pursuant to his instructions, to detain the vehicle for investigatory purposes.

In our opinion, the stopping of the vehicle was the product of efficient law enforcement and well within the guidelines discussed in *Williams* v. *State* (1974), 261 Ind. 547, 307 N.E.2d 457. We therefore reject appellants' grounds of impropriety in the overruling of their motion to suppress.

## IV.

Finally, appellants argue that (1) there was no foundation laid connecting the evidence seized from the abandoned vehicle with appellants and (2) that it was prejudicial to permit a witness to testify that "weapons . . . hand guns and long guns" were found in Leavell's apartment. We reject both contentions.

Without belaboring the issue, from our analysis above, we find that testimony presented at trial was sufficient to establish a link between the evidence seized from the abandoned automobile and Smith. For that reason, we find no error demonstrated by appellants' argument on this point.

Regarding the second assertion of error under this issue, appellants suggest that it was prejudicial and reversible error to permit a police officer to testify that "weapons . . . hand guns and long guns" were discovered during the search of Leavell's apartment. Appellants argue that this testimony could serve no purpose other than to unduly prejudice the jury.

Inasmuch as the crime with which appellants were charged had as an essential element their being armed with a deadly or dangerous weapon, testimony concerning the discovery of weapons in Leavell's apartment is unquestionably relevant evidence.

Further, since this relevant evidence logically tends to prove a material fact, the interest in the State in arriving at the truth will generally prevail over the undesirable tendency to prejudice. See, *Lawrence* v. *State* (1972), 259 Ind. 306, 286 N.E.2d 830; *Boles* v. *State* (1975), 163 Ind. App. 196, 322 N.E.2d 722. Nevertheless, as stated in *Boles, supra:*

> "We envision that in a given case, the admission of relevant evidence might constitute error if of minimal probative value and, at the same time, very likely to induce the jury to arrive at a decision based upon improper considerations. However, balancing probative value against such factors as undue prejudice in determining the admissibility of evidence is a function committed largely to the discretion of the trial judge."

Viewing the challenged evidence in light of all attendant circumstances surrounding its introduction, we find no abuse of discretion in its admission.

From our above analysis of appellants' assertions of impropriety we conclude that Leavell's conviction must be and is hereby set aside due to insufficient evidence. The judgment of the trial court in all other respects is affirmed.

Affirmed in part, reversed in part.

Robertson, C.J. and Lowdermilk, J., concur.