**Luvern JORDAN, Appellant,**

v.

**STATE of Indiana, Appellee.**

No. 382 S 87.

Supreme Court of Indiana.

March 9, 1982.

William D. McCarty, Anderson, for appellant.

Linley E. Pearson, Atty. Gen., Janis L. Summers, Deputy Atty. Gen., Indianapolis, for appellee.

PIVARNIK, Justice.

This cause comes to us on a petition to transfer by the Attorney General of Indiana from the Court of Appeals, Fourth District. Defendant-appellant Luvern Jordan was convicted of robbery, Ind.Code (1979 Repl.) § 35–42–5–1, in a bench trial on May 23, 1980 and was sentenced to imprisonment for a period of ten (10) years. The Court of Appeals found that there was not sufficient evidence presented to the trial court to prove beyond a reasonable doubt that the defendant committed all of the elements of the crime of robbery and accordingly reversed the conviction. *Jordan v. State*, (1981) Ind.App., 422 N.E.2d 365. We find the Court of Appeals to be in error and accordingly vacate its opinion. We will further consider all other issues raised by defendant in his appeal.

Defendant Jordan lists four errors on appeal, concerning: 1) whether there was sufficient evidence to convict defendant of robbery; 2) whether the trial court erred in allowing the State to file notice of alibi less than twenty-four hours prior to the start of trial; 3) whether the trial court erred in permitting the testimony of witness Lillie Brown; and 4) whether the trial court erred in overruling defendant's motions to suppress introduction of a toboggan hat and army jacket.

### I.

It is a well established rule of law that where questions concerning the sufficiency of evidence are presented on appeal, only that evidence which is most favorable to the State, together with all logical and reasonable inferences which may be drawn therefrom, will be considered. *Kimmel v. State*, (1981) Ind., 418 N.E.2d 1152, 1158; *James v. State*, (1980) Ind., 411 N.E.2d 618, 622; *Dew v. State*, (1978) 268 Ind. 17, 19, 373 N.E.2d 138, 139. It is not the function of this Court nor the Court of Appeals, as appellate tribunals, to weigh the evidence or to determine the credibility of witnesses. That is the function of the trier of fact, either the jury in a jury trial or the trial court in a bench trial. *Lawson v. State*, (1980) Ind., 412 N.E.2d 759, 769; *Kimmel, supra; Dew, supra.* It is, of course, true that every criminal conviction must be supported by evidence upon each material element of the crime charged and that evidence must be such as will support the essential conclusions beyond a reasonable doubt. So long as there is evidence from which the trier of fact could have found, beyond a reasonable doubt, that each material element of the crime charged was proved, we will not disturb that judgment. *Dunville v. State*, (1979) Ind., 393 N.E.2d 143, 148; *Lottie v. State*, (1974) 262 Ind. 124, 126, 311 N.E.2d 800, 801.

The testimony presented to the trial judge revealed that Carla Owens was working her regular shift at the Speedway Petroleum Station on November 12, 1979. At about 8:30 a. m., she was counting money when she saw a black man approaching the building. He said he needed gas and the use of a can to transport it; he gave her a five-dollar bill for deposit on the can and then entered the restroom. On coming out of the restroom, he asked for two dollars ($2.00) worth of gas and then entered the restroom again. She turned away from him and when she turned around again, Jordan had come out of the restroom and was leaning over the counter, pointing a gun at her. He announced that "it was a holdup." Owens described the man as being about six feet three inches tall, a very large man, weighing about two hundred pounds. She said he wore a green army coat and a green toboggan hat and seemed to be wearing a sweatshirt under the coat. He took thirty-two hundred ($3200) dollars

in small bills from the station. When a customer came into the station, the man said "This is not a holdup," and left. Owens said the man had small beady eyes, bushy eyebrows and large lips. She could not absolutely identify the defendant and said the hat might have affected the view of his eyes, a feature which, normally, she observed about people. She told Police Officer Hall that the man who robbed her had facial hair, such as a beard. In court, Jordan had only a mustache. When asked about the facial hair in court, she said she wasn't sure, that it might have been a mustache but there was some facial hair. Pictures of Jordan taken at the time that this robbery occurred, showed that he did have facial hair.

Lillie Brown testified that she was living with Jordan at the time this robbery occurred. She said she had a dark blue 1978 Chevrolet automobile and that Jordan often drove the car. She said that he borrowed it early one morning, about 6:40 a. m., and came back with it at 9:00 a. m. Jordan told Brown at that time that they would now be able to buy bedroom furniture for the kids. He told her he had placed some money at her house and that he got the money from a robbery he committed. She did not question him in detail about the robbery but Jordan told her she would read about it in the newspapers. The next day she read in the newspaper that the Speedway Petroleum Station had been robbed. Jordan later revealed to her that he had a large sum of money in a trash bag at her house. Brown had to live with her mother a great deal of the time because she had no furniture in her apartment. Jordan took six-hundred dollars ($600) in twenty-dollar bills from the trash bag and gave it to Brown for the purchase of the bedroom furniture. Both of them then went to a store in Muncie and paid six-hundred dollars ($600) down on a bedroom set, with a balance of one-hundred and thirty-seven dollars ($137) to be paid on delivery of the furniture. When the furniture was delivered, Jordan paid the balance in cash. Brown said that whenever Jordan needed money, he went to the trash bag, removed some money and put it in his bill-fold. He later purchased a refrigerator for her apartment and paid four-hundred and sixty-two dollars ($462) in cash for it. At the time Brown revealed this to the police, she had broken off her relationship with Jordan and made available to them two boxes of Jordan's belongings which he had left in a closet in her apartment. Among those belongings was a ski cap, green and yellow in color. When the cap was turned inside-out, it appeared all green. Carla Owens said the cap was exactly like the cap the robber was wearing. She, of course, was not able to say with certainty that it was the same cap. Also found among Jordan's belongings in the jail was a green, army type jacket. Carla Owens said this jacket was exactly like the one worn by the man who robbed her. She again, could not say absolutely that it was the same jacket. Both of these items were, however, of the type she had previously described and Owens testified they were just like the ones worn by the robber.

An additional witness, Steve Winkle, lived near the Station that was robbed. He said that at 8:30 a. m., on the morning of the robbery, a car, dark in color, pulled up at the house next door. The car contained two people; one a large black man who got out and walked across a nearby railroad track, while the other person remained in the car. He said this large black man wore dark clothing, a parka and a toboggan hat. He saw the same man return in a short while and they drove away. He reported this suspicious activity after he heard of the robbery at the filling station.

We have sufficient facts from which the trier of fact could reasonably determine that the defendant was, in fact, the one who committed the robbery in question. Though many of the facts are circumstantial, the mixture of direct and circumstantial evidence is sufficient. Individual items of evidence, standing alone, may not tend to be persuasive or probative of establishing guilt. But when a number of facts and a series of events are put together, they can tend to corroborate each other and establish a pattern of evidence that is probative. De-

fendant did, in fact, state to witness Brown that he had committed a robbery, that he had money to buy furniture, and that Brown would read about the robbery in the newspapers. This was direct evidence coming from the mouth of the defendant himself. The possession of a large amount of money, observed by witness Brown, was direct evidence. It is circumstantial evidence that a robbery reported at that time and on that day was at the Speedway Petroleum Station, that a large amount of money was taken, and that a dark car was used in the robbery. But taken together, the evidence rises above speculation, the suspicion of guilt, or mere opportunity to commit the crime assigned to it by the Court of Appeals. It cannot be said that it was mere conjecture or surmise by the trial judge in determining that there was proof beyond a reasonable doubt that the defendant committed the crime. When these facts are added to the testimony of Carla Owens, who commendably was very honest about it, stating that the person who committed the robbery had the physical characteristics of the defendant, that he wore an army jacket and a green toboggan hat, they become more probative. Even though army jackets and green toboggan hats are not uncommon items in our society, we are narrowed down to an individual who owns both. The trial judge heard all of the evidence and observed the witnesses. He was more able than we are to determine their credibility and determine the probative value of all the evidence before him. Since the evidence presented to the trial court was sufficient to find beyond a reasonable doubt that the defendant was guilty of robbery as charged, we allow its judgment to stand.

## II.

It is the defendant's contention that the State unreasonably delayed filing its response to his notice of alibi and should have been, as a result, precluded from presenting any evidence that Jordan was at a place other than that cited in the notice. Ind.Code (1979 Repl.) § 35-5-1-2 provides that the prosecutor shall serve a responsive statement not less than eight days before trial. That requirement does not, however, apply where the trial court sets a date less than fourteen days ahead. Ind.Code (1979 Repl.) § 35-5-1-1. On March 20, 1980, the trial date was set for April 22, 1980, at the defendant's request for speedy trial. The defendant then filed his notice of alibi on March 28, 1980. It was apparently the practice of the trial court to have the causes tried in the order in which they are set even if they are not reached on the day originally fixed for trial. Although all parties state that the record is not clear as to when the trial date was moved up from the April 22 date, it is apparent that because of court congestion, the court was running about three or four weeks behind on trial and required the re-setting of causes to follow in the order in which they were set. The record here showed a May 21, 1980, order of transportation of the defendant to the court for trial. The parties were given only two or three days notice then that the case would go to trial and the prosecutor was unable to file the notice within eight days of trial. The court then stated to the parties that since the congested docket had caused the extension of time in bringing this cause to trial, he granted the State's right to file their response and offered to continue the cause for the defendant to have at least eight days to reply. Defense counsel then made the following statement in open court:

"... Your Honor, I have discussed his honor's previous ruling and my client is willing to waive his right that pursuant to the statutes that I read to you regarding notice of Alibi and we are willing to proceed with trial. We would orally tell prosecutor and Court that we would amend our previous Notice of Alibi to indicate that our client was not in Muncie, Indiana but was at the time that Mr. Lacey told was at an aunt's house here in Anderson.

*The Court*: Ok do you have her name?

Mr. Smith: Pauline McAllister."

The court then granted the defendant's motion to waive the eight day requirement under the alibi statute and the trial proceeded.

The proper remedy for a delay or failure of the State to respond to a notice of alibi is a continuance. *Owens v. State*, (1975) 263 Ind. 487, 498, 333 N.E.2d 745, 751; *Willis v. State*, (1980) Ind.App., 411 N.E.2d 696, 698; *Bullock v. State*, (1978) Ind.App., 382 N.E.2d 179, 182. The record shows that the defendant waived the right to a continuance in addition to any right he had under the alibi statute. Furthermore, the defendant offered no alibi evidence at the trial; therefore, it does not appear that the trial court's handling of this issue has prejudiced defendant. We see no reversible error in this issue.

### III.

█ Defendant next contends that State's witness Lillie Brown should not have been allowed to testify and charges that the trial court erred in granting a continuance and in issuing a warrant for Brown. Lillie Brown was endorsed upon the indictment against this defendant as one of the State's witnesses. On the day she was to testify, the prosecutor informed the trial judge that he had issued a subpoena for Brown and that the sheriff had advised him, the prosecutor, that the subpoena had been served on Lillie Brown but that she did not appear to testify. The prosecutor indicated that she was a material witness and asked the court to give him time to obtain Brown and further suggested to the court that the court had contempt powers to require the presence of Brown. The prosecuting attorney offered to be put under oath and testify that he had served a subpoena on Brown but the court did not require this testimony and instead issued a bench warrant ordering that Lillie Brown be arrested and produced in open court to testify and granted a recess to give time to obtain her. It is apparent that Brown had become an uncooperative witness at this point and was attempting to repudiate some of her former statements to the police. The prosecutor stated he did not know until that day that Brown was not going to appear. Brown did appear and did testify. Her failure to obey the subpoena to appear and testify was contempt under Ind.R.Tr.P.

45(f) and the court had the authority to issue a bench warrant to order that she be physically arrested and produced in open court for that purpose. Apparently there was a short delay in the trial until Brown appeared and testified. It is now the contention of the defendant that Brown's testimony was so unreliable and the procedure in getting her on the stand so questionable, that she should not have been allowed to testify at all. All of the arguments the defendant makes as to the testimony of this witness goes to the question of her credibility. Whether or not she was properly arrested is a question she could raise touching on her personal liberties and rights. It affects defendant's case only to the extent that it places in question the credibility of this witness. The trier of fact in this case was, of course, the trial judge himself and he was fully aware of all of these circumstances. He properly exercised his discretion in the actions that he took and he had the duty of determining the credibility of the witness. *Lawson, Kimmel, Dew, supra,* Issue I. There is no issue presented on appeal which would justify us in finding that the trial court committed any error in having Brown testify.

### IV.

█ Finally, the defendant contends that the stocking cap and coat were not sufficiently identified so as to be admissible into evidence. Lillie Brown gave the police permission to search her residence in which the stocking cap was found. No question was raised as to this search. The army jacket was found in defendant's belongings at the jail. Witness Owens observed these items and stated that they were identical to the type worn by the man who committed the robbery. She told the police this when she observed them before trial and testified in the same manner on the stand. The trial judge has discretion in the area of admission of items into evidence and need not require absolute and positive identification. It is proper for the trial judge to admit evidence that has even a slight tendency to connect the defendant with the offense and

any objections to such evidence go to the weight of such item and not its admissibility. *Crosson v. State*, (1978) 268 Ind. 511, 376 N.E.2d 1136; *Holt v. State*, (1978) Ind. App., 383 N.E.2d 467. This cause was tried by the trial judge and not by jury. It is presumed that the trial judge knows the law and will follow it regarding the rules of evidence. In view of the evidence in this cause and the testimony of witness Owens regarding these two items, there was sufficient identification of the hat and the coat to justify the trial judge in admitting them into evidence and considering them in determining the guilt or innocence of the defendant. The trial court is in all things affirmed.

GIVAN, C. J., and HUNTER, J., concur.

PRENTICE, J., dissents with separate opinion in which DeBRULER, J., concurs.

PRENTICE, Justice, dissenting.

I dissent from the majority's treatment of Issue I. I agree with the Court of Appeals that the evidence is insufficient to establish beyond a reasonable doubt that Defendant committed the Robbery charged.

This case was tried to the bench. The only issue before the trial court was the identity of the perpetrator of a November 12, 1979 Robbery of Carla Owens at the Speedway service station in Anderson. The testimony of Carla Owens, alone, which is related accurately by the Court of Appeals, 422 N.E.2d at 367, would not be sufficient to sustain the conviction. *Lottie v. State*, (1974) 262 Ind. 124, 311 N.E.2d 800. The majority admits as much by resort to cumulating the events and evidence in order that they may corroborate one another and in turn imply Defendant's guilt. The facts, which relate to the bandit's identity, are entirely circumstantial and do not corroborate one another.

In addition to Owens' testimony, the State offered the testimony of Lillie Brown and a statement that Brown gave to the police on December 18, 1979. The statement appears at 422 N.E.2d 368–69.

The statement came into evidence under the rule of *Patterson v. State*, (1975) 263 Ind. 55, 324 N.E.2d 482. While Brown admitted that she gave the statement, she repudiated much of its contents at trial and testified that the police had threatened to charge her as an accomplice and to take her children from her if she did not cooperate. Circumstances such as the threatening of a witness might persuade me to reconsider our decision in *Patterson. See Samuels v. State*, (1978) 267 Ind. 676, 679, 372 N.E.2d 1186, 1187. Nevertheless, we must credit the statement as substantive evidence. The statement proves at best that at "around the time" of the Speedway station Robbery, which Brown read about in a newspaper, Defendant admitted that he had committed a Robbery. Brown had no knowledge of the Robbery charged until she read about it in the newspaper. The language of her statement proves that she drew the conclusion that the Robbery she read about and the Robbery Defendant had mentioned to her were one and the same.

If Brown had testified in this fashion in court, an objection to relating this conclusion would have been sustained, as the conclusion is a fact that she surmised rather than one that she witnessed. *Diehl v. State*, (1901) 157 Ind. 549, 571, 62 N.E. 51, 58; *Hinshaw v. State*, (1897) 147 Ind. 334, 373, 47 N.E. 157, 169. Through the vehicle of an out of court statement, an otherwise inadmissible conclusion of a witness provides the necessary and missing link in the State's case. The Defendant admitted a Robbery, but the State did not produce evidence from which a trier of fact, rather than Lillie Brown, could reasonably infer that it was the Robbery charged that he had admitted.

I find nothing significant in Defendant's possession of small bills. He might have obtained them in a "Robbery" he committed, but the bills and his manner of storing them and spending them have no characteristic which links them to the Robbery charged.

I find nothing significant in Defendant's having had access to a dark blue 1978 Chev-

rolet Monte Carlo, which Brown testified had a light blue top. Witness Winkle stated that a man, wearing clothing similar to that described by Owens, entered a dark car, which was not white or red. This evidence permits an inference that Winkle observed the perpetrator of the Robbery during the getaway; however, it does not permit the additional inference that Defendant and the man Winkle observed are one and the same, nor that Winkle observed Brown's automobile.

I also find nothing significant in Defendant's ownership of a hat and army jacket that Owens described as "just like" the ones the bandit wore. There was nothing unusual about this clothing. That Defendant owned both a cap and a jacket implies at best, as the Court of Appeals found, that he had an opportunity to commit the offense charged. *See Leavell v. State*, (1975) 163 Ind.App. 425, 429, 324 N.E.2d 276, 278 (trans. denied).

The State bore the burden of proving the elements of the offense charged beyond a reasonable doubt. In this case, as in any other case, to meet the burden the State may rely wholly upon circumstantial evidence; however, the evidence at bar reflects at best that Defendant may be a bandit. It could not convince a reasonable trier of fact, beyond a reasonable doubt, that Defendant is the person who robbed Carla Owens of $3200 at the Speedway service station in Anderson on the morning of November 12, 1979 as the information charges. The judgment of the trial court should be reversed and the Defendant ordered discharged.

DeBRULER, J., concurs.