**Tyrone WILLIAMS, Appellant–
Defendant Below,**

v.

**STATE of Indiana, Appellee–
Plaintiff Below.**

**No. 12A02–9211–CR–540.**

Court of Appeals of Indiana,
Third District.

March 10, 1994.

Rehearing Denied June 9, 1994.

Richard D. Martin, Miller, Martin & Stuard, Frankfort, for appellant-defendant.

Pamela Carter, Atty. Gen., Julie Zandstra Frazee, Deputy Atty. Gen., Office of Atty. Gen., Indianapolis, for appellee-plaintiff.

STATON, Judge.

Tyrone Williams appeals his conviction of auto theft, a Class D felony.[1] He presents three issues for review, one of which necessitates reversal: whether the trial court should have granted Williams' motion to suppress

evidence gained pursuant to his warrantless arrest.

We reverse.

On May 14, 1992, at approximately 1:02 a.m., Frankfort police officers responded to an alarm activation at the WalMart Plaza on the east side of Frankfort. Two burglary suspects were apprehended; two fled on foot. At approximately 1:30 a.m., Frankfort Police Officer Boyd Martin and Clinton County Deputy Tim Porter received a report that the Frankfort WalMart Plaza had been burglarized. The officers were advised that two black males were seen fleeing on foot east of WalMart Plaza; no detailed description of the individuals was provided.

At approximately 2:30 a.m., Officer Martin observed a vehicle eastbound on State Road 28, approximately one quarter of a mile west of WalMart Plaza. Officer Martin observed that the vehicle, which bore a Clinton County license plate, was occupied by two black males. He communicated this information to Deputy Porter. The officers detained the vehicle approximately one and one-half miles east of WalMart Plaza.

As Deputy Porter exited his vehicle, he drew his weapon. He ordered the passengers of the detained vehicle to get out of the vehicle, get on the ground and place their hands behind their heads. A subsequent search of the detained vehicle disclosed that the steering column was broken or "hot-wired."

Williams was brought to trial on a charge of auto theft; a burglary charge was dismissed prior to trial. At a pre-trial hearing and at trial, Williams unsuccessfully moved to suppress evidence gained pursuant to his warrantless arrest.[2]

---

1. IND.CODE 35–43–4–2.5.

2. Williams renewed his motion to suppress the challenged evidence and entered a continuing objection to its admission: "Judge, at this point the defendant would ask the Court again to suppress any evidence that was the result of illegal detention of the defendant in violation of his constitutional rights against—against the—the prohibition against unreasonable search and seizures under the Fourth Amendment. Would object to any testimony coming in about anything that happened as a result of the stop or after the stop. I think we are reaching that point in the

testimony which we addressed in the hearing on the motion to suppress. I think the evidence is going to establish that the officers made an illegal arrest of these two individuals and that at the time that they placed these two individuals under arrest they did not have sufficient probable cause at that point. All they had were two black individuals. No further description. Seen driving a vehicle in an area west of the scene of the burglary. Would ask the Court to grant the motion to suppress—suppress any additional evidence, but also like to show a continuing objection to any testimony or any evidence which resulted after

On appeal, Williams contends that the officers lacked probable cause to arrest him. He relies upon this court's language in *Taylor v. State* (1984), Ind.App., 464 N.E.2d 1333, 1336, *reh. denied:* "Arrests made without the benefit of probable cause are unlawful, and evidence obtained therefrom is inadmissible."

■ The State responds that the officers merely conducted an "investigatory stop"—rather than effected an arrest—prior to gaining the information that the detained vehicle had been "hot-wired." A limited investigative stop may be conducted upon an officer's reasonable suspicion:

"As a general rule, automobile drivers are not shorn of their fourth amendment protections when they leave their homes and enter their automobiles. *Delaware v. Prouse,* 440 U.S. 648, 663, 99 S.Ct. 1391, 1401, 59 L.Ed.2d 660 (1979). However, 'there is nothing *automatically* unconstitutional in subjecting citizens to a brief detention under circumstances where probable cause for a formal arrest is lacking.' *Luckett v. State* (1972), 259 Ind. 174, 179, 284 N.E.2d 738, 741 (emphasis in original). The so-called 'stop and frisk' doctrine announced in *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), has allowed courts to gauge the reasonableness of particular investigative stops by striking 'a balance between the public interest [behind the investigation] and the individual's right to personal security free from arbitrary interference from law officers.' *United States v. Brignoni–Ponce,* 422 U.S. 873, 878, 95 S.Ct. 2574, 2579, 45 L.Ed.2d 607 (1975). Where the public interest served by the officer's investigation is great and the intrusion on individual privacy is small, investigative stops of limited duration and 'reasonably related in scope to the justification for their initiation' have been upheld. *Id.* at 881, 95 S.Ct. at 2580

(quoting *Terry,* 392 U.S. at 29, 88 S.Ct. at 1884). 'To justify a warrantless intrusion, the police officer need not have probable cause to make an arrest, but must 'point to specific and articulable facts which, taken together with rational inferences from those facts,' reasonably warrant intrusion upon an individual's right of privacy.' *Gipson v. State* (1984), Ind., 459 N.E.2d 366, 368 (quoting *Terry,* 392 U.S. at 22, 88 S.Ct. at 1880). If the facts known by the police at the time of the 'stop' are such that a man of reasonable caution would believe that the action taken was appropriate, the command of the fourth amendment is satisfied. *Id.* at 368."

*Platt v. State* (1992), Ind., 589 N.E.2d 222, 225–26.

Evidence adduced at the hearing on Williams' motion to suppress discloses that the circumstances of Williams' detention could not fairly be characterized as "a small intrusion on individual privacy, of limited duration, reasonably related in scope to the justification for its initiation." *See Gipson, supra.* At the hearing on the motion to suppress, Deputy Porter testified:

Q: When the vehicle was stopped at what point were guns drawn by the officers?

A: I believe I drew my gun immediately upon exiting my car.

Q: Did Commander Martin do the same thing?

A: I can't speak for Officer Martin.

Q: Where were the suspects when you drew your weapon?

A: They were still inside the car that we stopped.

Q: Who ordered them from the car?

A: I did.

Q: What was your specific instruction?

A: To get out of the car and get on the ground.

the illegal arrest and the investigatory stop. Would ask the Court to consider whether on the basis of the evidence of two black individuals that was all according to Officer Martin's testimony just now. That was the limit of what he was informed. Two black suspects. Would the Court have issued an arrest warrant based upon that? I think the answer is clear, Judge, you

would not have issued an arrest warrant for two black individuals seen driving down the road an hour and a half after a burglary had been committed. We would ask the Court to grant the Motion to Suppress. Also like the Court to show the objection as to any evidence seized as a result or which resulted from the illegal stop and detention of the defendant." Record, pp. 217–19.

Q: Did you order them to place their hands behind their heads?

A: Yes.

Q: Was this prior to your doing a search of the vehicle?

A: Yes, it was.

Record, p. 161.

■ An arrest occurs when an officer "interrupts the freedom of the accused and restricts his liberty of movement." *Armstrong v. State* (1982), Ind., 429 N.E.2d 647, 651. This court has stated: "Holding a person at gunpoint certainly restrains his liberty of movement and is a clear example of arrest." *Taylor, supra,* at 1335. Inasmuch as Williams was held at gunpoint immediately upon his exit from his vehicle, he was clearly arrested at that point.[3] Thus, the relevant inquiry is whether the officers had probable cause to effect an arrest at that time. Probable cause exists when the facts and circumstances would lead a reasonably prudent person to believe the arrestee has committed a crime. *Id.*

At the suppression hearing, Officer Martin testified:

"There was nothing that made me believe they had committed a criminal act. The fact that I stopped them was the fact that it was a black male driver that I did not recognize in a car with Clinton County plates."

Record, p. 146.

Deputy Porter testified:

Q: Did you—was there an exchange of information between you and Boyd prior to the stop taking place?

A: Just the fact that he was following the two black males that was in a car with Clinton County license plates.

Q: Did you observe the occupants in the car prior to its being stopped?

A: Yes, I did as I passed them.

Q: Was there any information that you obtained when you passed them that you relayed to Boyd Martin?

A: Just that, yes, there is two black male subjects in the car.

Q: Did you recognize those men?

A: No, I did not.

\* \* \* \* \* \*

Q: Do you know what the approximate black male population is in this county?

A: I'm guessing thirty at the most.

Record, pp. 158–59.

■ The facts and circumstances known to the arresting officers at the time of the arrest may be summarized as follows: during early morning hours, two black males unacquainted with the officers were traveling through Clinton County in a vehicle bearing Clinton County license plates.[4] We cannot

---

**3.** The dissent implies that the suspects were initially asked to "exit" their vehicle and were placed under arrest only after Deputy Porter observed the broken steering column. However, at the suppression hearing, Deputy Porter testified that he drew his weapon immediately upon exiting his vehicle. He directed the suspects to lie on the ground with their hands behind their heads. He testified that he *subsequently* searched the vehicle. Record, p. 161. At trial, Deputy Porter reiterated: "After the subjects were removed from the car and on my way back to my car to get my handcuffs I looked in because the driver's door was open and at that time I seen [sic] the steering column was broken." Record, p. 237. Thus, the "restriction of liberty at gunpoint," i.e., "arrest" was effected before Deputy Porter observed that the steering column had been broken. *See Armstrong, supra.*

**4.** The dissent states that "the uncontradicted evidence demonstrates there are 100 African–Americans in Clinton County with 30 of them being males." The "uncontradicted evidence" consists of mere speculation by the officers involved:

Q: Do you know what the population of black males is in Clinton County, approximately?
A: No, I don't.

Q: Do you have—do you know approximately what the black male population is in this county or in the city?
A: No, I don't.
Q: Be fair to say the county is predominately white?
A: Yes, I'd say that's correct.
Q: Be fair to say there is [sic] less than 100 blacks in this county?

A: I *would say* that to be correct.
Record, pp. 147–48.
Q: Do you know what the approximate black male population is in this County?
A: I'm *guessing* thirty at the most.
Record, p. 159.

Moreover, the majority fails to recognize the relevance of a sparse black male population in Clinton County when assessing the information

conclude that these facts would lead a reasonably prudent person to believe that the vehicle occupants had committed a crime.

The trial court erred in denying Williams' motion to suppress the evidence gained pursuant to his warrantless arrest. Accordingly, Williams' conviction is reversed.

SULLIVAN, J., concurs and files separate opinion.

HOFFMAN, J., dissents and files separate opinion.

SULLIVAN, Judge, concurring.

I agree that when the officers, at gunpoint, ordered the defendant and the driver to exit the automobile and lie upon the ground with their hands behind their heads, an arrest was effected. I further agree that the arrest was made without probable cause.

The focus of the State's argument, however, is that the broken steering column was discovered pursuant to a valid investigatory stop. Therefore, lack of probable cause for arrest is not dispositive of the admissibility issue.

The State correctly observes that evidence discovered during a search incident to a legitimate investigatory stop is admissible. The facts before us, however, do not reflect a legitimate investigatory stop. The facts and circumstances discussed in the majority opinion not only reflect absence of probable cause for arrest, but also wholly fail to disclose anything which would prompt a reasonable suspicion of wrongdoing so as to justify the intrusion upon privacy and an investigation. *Rutledge v. State* (1981) Ind., 426 N.E.2d 638. For this reason, I concur in reversal of the conviction.

HOFFMAN, Judge, dissenting.

I respectfully dissent.

On May 14 at approximately 1:30 A.M., Officer Martin was called to assist the night shift. He went to Wal–Mart Plaza in Frankfort, Clinton County, Indiana, where a burglary had taken place. He was informed that two black males had fled the scene running east from behind the plaza. Open fields extend several miles east until a highway intersects them. A populated area lies west of the plaza. Officer Martin cruised the area until about 2:30 A.M. and then parked at 18th and Hot Dog Avenues. Traffic was very light with mostly truck traffic. He noticed a dark car eastbound on 28th with a black male driving. He pulled in behind the vehicle and saw that the car had Clinton County license plates. He further observed someone's head on the passenger side appearing as if someone had slid down in the seat. He did not recognize the individual in the car. The uncontradicted evidence also demonstrates there are 100 African–Americans in Clinton County with 30 of them being males. Officer Martin then contacted Officer Porter and directed him to get in front of the car with Clinton County plates. After Officer Porter was in position, the vehicle was stopped and the passenger ordered out of the car. After the two men exited the car, Officer Porter observed that the steering column had been broken and the car had been hot wired. The car occupants were placed under arrest.

Our supreme court in the unanimous opinion of *Poling v. State* (1987), Ind., 515 N.E.2d 1074, 1077, clearly sets out the rule on initial stops:

> "A police officer may make an initial or investigatory stop of a person or automobile under circumstances where probable cause for arrest is lacking when the facts known to the officer at the time of the stop are such as to warrant a man of reasonable caution to believe an investigation is appropriate. *Terry v. Ohio* (1968), 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889; *Taylor v. State* (1980), 273 Ind. 558, 561, 406 N.E.2d 247, 250."

The court found that California police officers were within the rule when they observed two young males sitting in a car with Missouri plates in a parking lot. The area was a

known to the officers which might lead them to suspect that the individuals under scrutiny had

committed a crime.

high crime area and the police could not tell whether the boys were asleep or unconscious.

In *Marsh v. State* (1985), Ind., 477 N.E.2d 877, 878, our supreme court stated:

> "A robbery by two white men had just occurred and the officer was near the robbers' possible destination. The hour was late and the streets empty but for the defendant's and his companion's vehicle. The officer found their behavior unusual. These facts indicate the constitutionality of the officer's action pursuant to *Terry v. Ohio* (1968), 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889...."

In *Cheeks v. State* (1977), 266 Ind. 190, 361 N.E.2d 906, 909, our supreme court found the following facts sufficient:

> "When Deputy Sheriff Geloff stopped the automobile in which the Appellant was riding, he was in possession of at least the following information on the crimes in question: 1) Two Negro males had robbed the Kroger store on north Michigan Road; 2) Near the time of the robbery, a large blue automobile was seen driving from the Kroger parking lot at a high rate of speed; 3) This blue car headed south on Michigan Road; 4) A woman's purse was taken during the robbery; 5) The crimes occurred at approximately 12:30 a.m., when it may be presumed that traffic was not at its peak level."

*See also Williams v. State* (1974), 261 Ind. 547, 307 N.E.2d 457 and *Smith v. State* (1975), 163 Ind.App. 425, 324 N.E.2d 276, where the courts have held similar facts, as in our case, well within the guidelines and the product of efficient law enforcement.

After the stop, the officers, based on safety concerns, may exercise discretion and require a driver and passenger to exit the vehicle. *Poling* at 1077. Here the officers under the circumstances were warranted as men of reasonable caution to believe the stop was appropriate. After observing the broken steering column, they had probable cause to arrest.

I would affirm the trial court.