**STATE of Indiana, Appellant–Plaintiff Below,**

v.

**Chris SAMARAS, Appellee–Defendant Below.**

No. 49A02–9401–CR–39.

Court of Appeals of Indiana, Third District.

Oct. 6, 1994.

Transfer Denied Dec. 14, 1994.

Pamela Carter, Atty. Gen., Julie Zandstra Frazee, Deputy Atty. Gen., Indianapolis, for appellant.

Susan W. Brooks, James T. Flanigan, McClure, McClure & Kammen, Indianapolis, for appellee.

STATON, Judge.

The State appeals the grant of a motion to suppress evidence which effectively precluded further prosecution of Chris Samaras for driving while intoxicated.[1]

The State presents a single issue for review: whether the trial court erred in granting the motion to suppress upon finding that a police officer "arrested" Samaras in contravention of IND.CODE 9–30–2–2.

We affirm.

On May 15, 1993, Indiana State Police Detective Bill Smith (who was off-duty, out of uniform and driving an unmarked police vehicle) was traveling on I–465 near U.S. 31 in Indianapolis when he observed a vehicle weaving from lane to lane. Detective Smith called for a uniformed officer to stop a possible drunk driver. Indiana State Police Officer Laurie Schmitt responded and advised

---

1. IND.CODE 35–38–4–2(5) permits the State to appeal the trial court's grant of suppression of evidence where it effectively terminates the State's prosecution.

Detective Smith that she was proceeding toward him, traveling from Boone County.

Detective Smith followed Samaras for approximately fourteen miles. After observing that several vehicles were forced to evade Samaras' vehicle, Detective Smith activated a portable red light and signalled Samaras to stop. Detective Smith identified himself as a police officer, took custody of Samaras' drivers license and informed Samaras that he was being detained until Officer Schmitt arrived.

Subsequently, Officer Schmitt arrived at the scene, administered field sobriety tests and arrested Samaras. Officer Schmitt later administered a B.A.C. test, which indicated that Samaras' blood alcohol content was .14%. Samaras moved to suppress the test results, contending that his arrest was effected in contravention of I.C. 9–30–2–2 which provides in pertinent part:

> "A law enforcement officer may not arrest or issue a traffic information and summons to a person for a violation of an Indiana law regulating the use and operation of a motor vehicle on an Indiana highway or an ordinance of a city or town regulating the use and operation of a motor vehicle on an Indiana highway unless at the time of the arrest the officer is:
>
> (1) wearing a distinctive uniform and a badge of authority; or
>
> (2) operating a motor vehicle that is clearly marked as a police vehicle[.]"

At the suppression hearing, and on appeal, the State has argued that Detective Smith did not "arrest" Samaras but merely "detained" him until Officer Schmitt arrived.

An arrest occurs when an officer "interrupts the freedom of the accused and restricts his liberty of movement." *Williams v. State* (1994), Ind.App., 630 N.E.2d 221, 224 (citing *Armstrong v. State* (1982), Ind., 429 N.E.2d 647, 651). An "investigative detention" which does not constitute an "arrest" occurs when the officer makes "a small intrusion on individual privacy, of limited duration, reasonably related in scope to the justification for its initiation." *Id.* at 223.

Recently, in *State v. Caplinger* (1993), Ind. App., 616 N.E.2d 793, this court considered whether the detention of a suspected drunk driver by an out-of-uniform officer awaiting a uniformed officer constituted an "investigative detention" or an "arrest."

"An examination of the facts here compel us to conclude Caplinger was arrested by Officer Busby. At the suppression hearing Officer Busby testified that he took Caplinger's keys to prevent her from driving. Record at 118. He also testified that he identified himself as a police officer and that Caplinger was not free to leave. Record at 123. Since Officer Busby interrupted Caplinger's freedom and restricted her liberty of movement, we must conclude he had effectively arrested her.... As evidence obtained in an unlawful arrest may be excluded upon proper motion by the defendant, *Pawloski v. State* (1978), 269 Ind. 350, 380 N.E.2d 1230, we conclude the trial court properly granted Caplinger's motion to suppress the evidence obtained after she was stopped."

*Id.* at 795.

At the suppression hearing held in the instant case, Detective Smith testified that he was off-duty, out-of-uniform and driving an unmarked police vehicle in which his wife was a passenger. He further testified to the circumstances surrounding the stop of Samaras:

Q: Okay, and so you did advise him that you were a police officer?

A: I did.

Q: And did you obtain his driver's license and registration?

A: I believe I did, yes.

Q: And—uh—did you—uh—at the time that you were—uh—asking for his driver's license, and did he give you his driver's license—did you have possession of it?

A: I believe so, yes.

Q: Um—at any time prior to the arrival of any other officers, was Mr. Samaras free to leave?

A: No, I would not have let him left [sic] because of the way he was driving. That's the reason I stopped him to begin with.

Record, pp. 47–48.

Q: Okay. When he exited the vehicle, do you recall where the keys to the vehicle were?

A: I believe they were still in the ignition, but I'm not positive.

Q: Okay. You don't recall taking them out of the ignition?

A: I think that I did take the keys, but I'm not positive to that. I normally—the reason I say that is cause I normally do.

Q: But you don't specifically recall having done that?

A: I think I did, but I couldn't testify for sure that I did.

Q: Okay. Um—and was the Defendant ever handcuffed—uh—by you?

A: No, he was not.

Q: Uh—did you ever tell him that he was under arrest?

A: I told him that—uh—I was going to keep him there until such time as the other officer got there to speak with him.

Record, pp. 59–60.

Q: [D]uring this couple of minutes whether it was one minute, five minutes, ten minutes that you waited ... Chris Samaras did not have the freedom to leave, did he.

A: I've already told you that—that's correct.

Record, p. 65.

The evidence presented at the suppression hearing supports the trial court's conclusion that Detective Smith (lacking a distinctive uniform or vehicle) "interrupted the freedom of Samaras and restricted his liberty of movement," i.e., "arrested" Samaras. Therefore, the trial court properly granted Samaras' motion to suppress the evidence gained pursuant to the illegal arrest.

Affirmed.

GARRARD and RILEY, JJ., concur.