**Wesley WILLIS, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

No. 71A03–0809–CR–437.

Court of Appeals of Indiana.

May 28, 2009.

Timothy J. Walsh, Granger, IN, Attorney for Appellant.

Gregory F. Zoeller, Attorney General of Indiana, Michael Gene Worden, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

MAY, Judge.

Wesley Willis appeals his conviction of Class A misdemeanor possession of marijuana,[1] asserting the police violated his Fourth Amendment right to be free of unreasonable search and seizure.[2] We affirm.

1. Ind.Code § 35–48–4–11.

2. Willis mentions Article 1 Section 11 of the Indiana Constitution in his Appellant's Brief;

## FACTS AND PROCEDURAL HISTORY

Around midnight on July 19, 2007, police officers went to the 1100 block of East Milton Street in South Bend in response to a report an African–American male was holding a gun to the head of another African–American male. When officers arrived in the area, they saw Willis, who is African–American, standing on the sidewalk with another African–American male. One or two African–American females were in the adjacent yard. Officers drew their guns, approached the group, and ordered the men to kneel with their hands raised. The officers handcuffed each man with his hands behind his back and then conducted pat-down searches of everyone in the group to determine whether anyone was carrying a handgun. Officers also searched the area to ensure no one had thrown away a handgun as the officers were arriving.

Officer Christopher Bortone had Willis stand so he could pat down his outer clothing. Officer Bortone noted Willis had a large bulge in his left front pants pocket. The front of the bulge was a large soft object, but behind that was a hard object, which Officer Bortone believed might be "a real[ly] small caliber handgun." (Tr. at 38.) Officer Bortone asked Willis for permission to "reach in his pockets to further investigate," and Willis consented. (*Id.*) To reach the hard object, Officer Bortone had to remove the large soft object, which was a bag containing over sixty grams of marijuana. The hard object was a cell phone.

The officers arrested Willis, and the State charged him with possession of marijuana as a Class D felony. Willis waived his right to a jury trial. At trial Willis moved to suppress the marijuana, asserting the search violated his Fourth Amendment right to be free of unreasonable search and seizure. The court then simultaneously heard evidence regarding the motion to suppress and the trial on the merits from the two officers who had been at the scene. Willis did not object to the testimony about the marijuana. The court took the motion under advisement.

About six weeks later, the court denied the motion to suppress and found Willis guilty in an order that included specific findings:

1. On July 19, 2007, officers of South Bend Police Department were dispatched to the area of the 1100 block of East Milton Street, in South Bend, St. Joseph County, Indiana, with respect to an altercation involving two men, one who was reported to have been holding a gun to the head of the other.

2. The description given to the South Bend police officers was that both men involved were male African Americans. Further, officers testified that they responded to the scene "quickly."

3. Officer Jeremy Gadsby, of the South Bend Police Department, described that the area where he and other police officers were dispatched as a "high crime area" and Officer Gadsby estimated that there have been approximately twenty to twenty-five police dispatches to that general area per month, most of it being domestic disputes, robberies, fights, and reports of "shots fired."

however, he provides no separate analysis based on our state constitution. Accordingly, we address only his federal claim. *See State v. Azania*, 865 N.E.2d 994, 998 n. 4 (Ind. 2007) (where party cites Indiana Constitution but presents no separate argument based thereon, we resolve the federal claim and "express no opinion" about the state claim).

4. Officer Gadsby, further, testified that when he arrived he saw two "male blacks" and one "female black" standing in a yard. Officer Gadsby testified that Off. Christopher Bortone, also of the South Bend Police Department, had also responded to the call..[sic]

5. Officers Bortone and Gadsby approached the two men, with their service weapons drawn, and ordered the men to their knees. Officers Bortone and Gadsby then placed both men in handcuffs, not only for their own safety, because of the nature of the dispatch (that is, a report of a gun being involved), but also because of their knowledge of the area being a "high crime area."

6. Officer Bortone performed an "outer-clothing pat-down" of the defendant and in doing so felt a large soft bulge and the top of a small hard object. Officer Bortone testified that he believed the hard object could possibly be a small caliber handgun and, after receiving consent from the defendant to search the pocket, removed the soft object in order to get to the hard object, and found the soft object to be a baggie containing what he believed to me [sic] marijuana. It was later learned that that hard object was, in fact, a cell phone.[3]

7. Based upon the testing done with respect to the contents of soft package, the contents was [sic] found to be marijuana.

Based upon these findings, the Court finds that the detention and search for weapons, [sic] by the officers was reasonable, and that the incidental discovery of marijuana in the course of the search is not impermissibly unconstitutional.

Accordingly, the Court now denies the defendant's Motion to Suppress and, [sic] finds that on July 19, 2007, the defendant possessed marijuana. Further, based upon the testimony adduced at trial, the Court finds that the weight of the marijuana was in excess of 30 grams.

Accordingly, the Court finds that the State has proved beyond a reasonable doubt that the defendant is guilty of Possession of Marijuana, as a class D felony.

As such his conviction is for Possession of Marijuana, the Court orders a pre-sentence report, and schedules the matter for sentencing, but delays until sentencing whether the judgment shall be entered as a class A misdemeanor and [sic] a class D felony.

(Appellant's App. at 4–5) (footnote in original). After the hearing, the court entered the conviction as a Class A misdemeanor and sentenced Willis to one year in the Department of Correction.

### DISCUSSION AND DECISION

■ Because the State did not timely file a Brief, we apply a less stringent standard of review whereby we may reverse if Willis establishes *prima facie* error. *See Parker v. State*, 822 N.E.2d 285, 286 (Ind. Ct.App.2005). *Prima facie* error is "error at first sight, on first appearance, or on the face of it." *Id.* We apply this rule not to benefit Willis, but to relieve us of the burden of controverting his arguments. *See id.* We are not relieved, however, of

---

**3.** In as much as the Court finds the "patdown" and retrieval of not only the soft object but the hard object [to] be permissible under *Terry v. Ohio*, 391 [392] U.S. 1, 88S.C. [sic] 1856 [1868] [20 L.Ed.2d 889] (1968), the Court does not reach the issue as to whether the defendant was properly advised prior to containing [sic] consent to search.

our obligation to properly decide the law as applied to the facts of the case. *Gamble v. State,* 831 N.E.2d 178, 185 n. 4 (Ind.Ct.App.2005), *trans. denied* 841 N.E.2d 184 (Ind.2005).

█ At the time of Willis' trial, the court had neither granted nor denied Willis' motion to suppress. Rather, the court was accepting evidence about the seizure of the marijuana at the same time it was hearing the cause on the merits. When the officers testified about finding and testing the marijuana, Willis did not object He therefore waived any error in the admission of the evidence at trial. *See Townsend v. State,* 632 N.E.2d 727, 730 (Ind. 1994) (if error not objected to at trial, it cannot be raised on appeal).

█ Where an appellant fails to preserve alleged error with a timely objection at trial, we may reverse only if the alleged error is fundamental. *Id.* To be fundamental, an error must be "a substantial blatant violation of basic principles rendering the trial unfair to the defendant." *Id.* (quoting *Hart v. State,* 578 N.E.2d 336, 337 (Ind.1991)).

Willis asserts three grounds on which the marijuana should have been suppressed: (1) the officers arrested him without probable cause; (2) the officers had no reasonable suspicion to stop him; and (3) the search exceeded the permissible scope of a pat down for weapons.

### 1. *Arrest vs. Investigatory Stop*

█ Willis first asserts the police arrested him when they approached him with their guns drawn and put him in handcuffs. Under the specific facts of this case, we hold Willis was not arrested.

█ The encounter between Willis and the police was an investigatory stop, and not an arrest. An investigatory stop allows a police officer to "temporarily freeze the situation in order to make an investigative inquiry." *Johnson v. State,* 766 N.E.2d 426, 429 (Ind.Ct.App.2002). An "arrest," on the other hand, is "the taking of a person into custody, that he may be held to answer for a crime." Ind.Code § 35–33–1–5.

Our Indiana Supreme Court has said: "An arrest occurs when a police officer interrupts the freedom of the accused and restricts his liberty of movement." *Sears v. State,* 668 N.E.2d 662, 667 (Ind.1996). We note, however, that an investigative stop also interrupts a suspect's freedom and liberty, although presumably for a shorter period of time. *See Mitchell v. State,* 745 N.E.2d 775, 782 (Ind.2001) ("in assessing whether a detention is too long in duration to be justified as an investigative stop, we consider it appropriate to examine whether the police diligently pursued a means of investigation that was likely to confirm or dispel their suspicions quickly") (quoting *United States v. Sharpe,* 470 U.S. 675, 686–87, 105 S.Ct. 1568, 84 L.Ed.2d 605 (1985)).

In *Payne v. State,* 854 N.E.2d 1199 (Ind. Ct.App.2006), we discussed whether placing a person in handcuffs necessarily converts an investigatory stop into an arrest. We reviewed the facts of two cases in which the use of handcuffs had amounted to arrest [4] and two cases in which the use of handcuffs occurred during an investigatory stop,[5] *see id.* at 1204–1205, and held the outcome depended on the totality of the circumstances in each case. After re-

---

**4.** *Loving v. State,* 647 N.E.2d 1123 (Ind.1995), and *Wright v. State,* 766 N.E.2d 1223 (Ind.Ct. App.2002).

**5.** *Crabtree v. State,* 762 N.E.2d 241 (Ind.Ct. App.2002), and *Johnson v. State,* 710 N.E.2d 925 (Ind.Ct.App.1999).

viewing the totality of the circumstances surrounding Payne's detention, including the Deputy's request for Payne's permission to handcuff him and the five-minute duration of the detention, we held Payne had not been arrested. *Id.* at 1205.

Willis notes our statement in *Williams v. State,* 630 N.E.2d 221, 224 (Ind.Ct.App. 1994), *reh'g denied:* "Holding a person at gunpoint certainly restrains his liberty of movement and is a clear example of arrest." That statement came from *Taylor v. State,* 464 N.E.2d 1333, 1335 (Ind.Ct. App.1984), where we held "the officer's action of holding Taylor at gunpoint *in these circumstances* constituted an arrest." *Id.* One circumstance we relied on in *Taylor* was that the police "had no reason to believe Taylor was armed." *Id.* Similarly, in *Williams,* the facts did not indicate the robbers being sought had weapons. 630 N.E.2d at 222.

Here, the police arrived at the scene moments after a caller reported a man holding a handgun to another man's head. In this circumstance, it would be unreasonable to expect a police officer to approach a suspect without his gun drawn, because the risk to the officer's safety is simply too great. Similarly, we believe the totality of the circumstances justifies the use of handcuffs on a suspect during the brief detention required to determine only whether that suspect possesses a handgun, which might be concealed on the suspect's person and easily accessible if the suspect's hands are free. We decline to hold the brief intrusion into Willis' privacy and the brief deprivation of his liberty of movement were constitutionally unreasonable as an investigative stop under the facts facing the officers in this case.

### 2. *Reasonable Suspicion*

Willis next asserts the police could not conduct the investigatory stop because they did not have reasonable suspicion that he was the person the caller reported. When we evaluate a determination of reasonable suspicion, we accept the court's factual findings unless they are clearly erroneous. *Myers v. State,* 839 N.E.2d 1146, 1150 (Ind.2005). Nevertheless, the ultimate determination of reasonable suspicion is a matter of law we review *de novo. Id.*

*Terry* set forth the rule that police can briefly detain an individual for investigatory purposes without a warrant if, based on specific and articulable facts, the officer has reasonable suspicion that criminal activity "may be afoot." *Terry v. Ohio,* 392 U.S. 1, 27, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). Reasonable suspicion entails some minimal level of objective justification for making a stop, something more than unparticularized suspicion or hunch, but less than the level of suspicion required for probable cause.

*Scott v. State,* 855 N.E.2d 1068, 1072–73 (Ind.Ct.App.2006) (some citations omitted). "An on-the-street investigatory stop by a police officer may be conducted if it is reasonable in light of all circumstances." *Oglesby v. State,* 513 N.E.2d 638, 639 (Ind. 1987). If the facts known by the police at the time of the stop would cause a reasonable person to believe the action taken was appropriate, the Fourth Amendment has been satisfied. *Id.*

Officer Bortone received a dispatch that at "1100 Milton, there's one man holding a gun to another man's head." (Tr. at 45.) Dispatch also reported the men involved were African–American. Officer Bortone rounded the corner onto Milton within one to two minutes of the dispatch. He did not see any people in the street, but he saw "two male blacks standing on the sidewalk, with a couple other females standing in the yard." (*Id.* at 47.) He did not see any

other males in the vicinity. Based on the totality of the circumstances, Officer Bortone had reasonable suspicion to conduct an investigatory stop of Willis and his male companion to determine whether either of them was the African–American man reported by the caller. *See, e.g., Marsh v. State*, 477 N.E.2d 877, 878 (Ind.1985) ("[H]ere, a specific crime had been freshly committed and the officer believed he was near the perpetrators' destination. The need for swift and effective law enforcement justified the stop and frisk of the defendant.").

### 3. *Scope of Search*

 *Terry* permits an officer "to conduct a limited search of the individual's outer clothing for weapons if the officer reasonably believes the individual is armed and dangerous." *Howard v. State*, 862 N.E.2d 1208, 1210 (Ind.Ct.App.2007). As the police had reasonable suspicion to conduct their investigatory stop of Willis, Officer Bortone could pat down Willis' clothing to feel for a weapon.

As Officer Bartone was conducting the pat down, he found Willis' left front pants pocket contained "a large bulge . . . and in the bulge I could feel a hard object in his pocket." (Tr. at 37.) He believed the hard object within the bulge could be a "small caliber handgun." (*Id.* at 38.) However, Officer Bartone was unable to confirm by pat down alone the identity of the hard object because of the placement of the bulge on top of the hard object. Neither could he remove the hard object from Willis' pocket to confirm or disprove his belief about its identity without first removing the large bulge. Under these circumstances, Officer Bartone did not exceed the scope of his authority by removing the bulge from Willis' pocket to determine whether the hard object was, as he believed it might be, a small handgun. *Cf.*

*Barfield v. State*, 776 N.E.2d 404, 407 (Ind. Ct.App.2002) (pat-down for weapons did not permit removal of cigarette box from coat pocket, when officer did not testify he thought the box was a weapon). We agree with the trial court that the "incidental discovery of marijuana in the course of the search [was] not impermissibly unconstitutional." (Appellant's App. at 5.)

Because Willis has not demonstrated prima facie error in the denial of his motion to suppress the marijuana found in his pocket, we affirm his conviction.

Affirmed.

FRIEDLANDER, J., and BRADFORD, J., concur.