**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Apr 18 2012, 9:00 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**ERNEST P. GALOS**
South Bend, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**RYAN D. JOHANNINGSMEIER**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| RONALD EDWARD MADISON, JR., ) | |
| ) | |
| Appellant-Defendant, ) | |
| ) | |
| vs. ) | No. 71A04-1110-CR-597 |
| ) | |
| STATE OF INDIANA, ) | |
| ) | |
| Appellee-Plaintiff. ) | |

APPEAL FROM THE ST. JOSEPH SUPERIOR COURT
The Honorable J. Jerome Frese, Judge
Cause No. 71D03-1003-FD-00200

**April 18, 2012**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**VAIDIK, Judge**

**Case Summary**

Ronald Edward Madison, Jr., appeals his conviction for Class D felony possession of cocaine. Specifically, Madison argues that the police officers did not have reasonable suspicion to stop him and that the evidence is insufficient to support his conviction. Finding that the officers had reasonable suspicion to conduct a brief *Terry* stop and the evidence is sufficient to support Madison's conviction, we affirm.

**Facts and Procedural History**

The evidence most favorable to the verdict shows that just before midnight on March 12, 2010, South Bend Police Department Officer Aaron Knepper and Corporal Erik Schlegelmilch received a dispatch that an unidentified person had called in to report that a male had either been pointing a gun or threatening a female with a gun in the area of Elwood and Johnson Streets. When Officer Knepper arrived in the area, he was "flagged down" by people on the street. Tr. p. 56.[1] Dispatch told Officer Knepper that the unidentified caller had reported that the male was now headed to Olive Street in a green Ford Focus. Supp. Tr. p. 8. When Officer Knepper arrived in that area, dispatch told him that the car was heading southbound. Officer Knepper started driving southbound when he observed a green Ford Focus. It was the only car driving in the area.

According to Officer Knepper, the green Ford Focus was driving "rather quickly" and "was exceeding the speed limit." Tr. p. 57; Supp. Tr. p. 8. Although Officer Knepper was driving sixty miles per hour in this thirty-mile-per-hour zone, it still took

---

[1] We refer to the trial transcript as "Tr." and the suppression-hearing transcript as "Supp. Tr."

him a couple of blocks to catch up to the green Ford Focus. Supp. Tr. p. 8. In addition to speeding, the green Ford Focus made two turns without signaling, at which point Officer Knepper activated his emergency lights. The green Ford Focus initially stopped but then pulled forward to the side of the street. Because Officer Knepper considered this a "high risk stop due to the nature of the call," he called for backup and waited outside his patrol car with his gun drawn and pointed at the green Ford Focus. Tr. p. 57. Once backup arrived, Officer Knepper ordered the driver to exit the vehicle and walk backwards toward him. Officer Knepper then handcuffed the driver, identified as Madison, and put him in his patrol car.

As Officer Knepper was putting Madison in his patrol car, Corporal Schlegelmilch approached the green Ford Focus to see if there were any passengers inside; there were none. But when Corporal Schlegelmilch walked up to the green Ford Focus, he plainly observed a plastic baggie containing a white rock-like substance on the driver's side floorboard. Corporal Schlegelmilch reported his finding to Officer Knepper. Officer Knepper then photographed the baggie, which both officers believed to contain crack cocaine. Officer Knepper field tested the contents, secured the baggie in his vehicle, and later placed the baggie in the evidence box. Laboratory testing revealed that the substance was cocaine.

Officer Knepper then transported Madison to the St. Joseph County Jail. During the booking process, Madison "started to forcibly gag, hold his stomach, [and] clutch in pain." *Id.* at 62. He told the nursing staff that he was not feeling well. Because Officer Knepper suspected that Madison may have swallowed drugs or something that could

3

have harmed him, he took Madison to the emergency room. During the drive, Madison asked Officer Knepper to roll down the window so that he could vomit. Not willing to compromise or lose any evidence, Officer Knepper told Madison that if he needed to throw up, he could do so in his patrol car. Madison did not vomit. While at the hospital, Madison asked Officer Knepper if he could use the restroom. When Officer Knepper told Madison that he had to accompany him, Madison suddenly no longer had to use the restroom. The nurses then asked Madison to disrobe and put on a gown for treatment. At this request, Madison again changed course and said that he no longer wanted treatment. Officer Knepper took Madison back to the jail.

Madison was booked into the jail. Due to the nature of the crime, Officer Knepper and another officer took Madison to the showers for a strip search.[2] Madison was "uncooperative" during the search. *Id.* at 65. The protocol is for the arrestee to remove one article of clothing at a time, turn it inside out, and hand it to the officers. But when Madison was down to his boxers, "he put one of his hands behind him and he would not remove his hand" and said he was "not doing nothing." *Id.* at 66. Believing that Madison was hiding contraband, Officer Knepper ordered him to remove his hands from his underwear. Although Madison eventually took off his underwear, he refused to turn around. The officers then approached Madison, grabbed his arms, and turned him around. At that point the officers saw a "bagg[ie] in between his butt cheeks." *Id.* at 67. The baggie contained a white rock-like substance. The officers retrieved the baggie and

---

[2] Madison does not challenge his strip search. *See Florence v. Bd. of Chosen Freeholders of the Cnty. of Burlington*, No. 10-945, 566 U.S. __ (Apr. 2, 2012).

placed it in the evidence box. Laboratory testing later revealed that the substance was cocaine. The weight of the cocaine in both baggies totaled 1.79 grams.

The State charged Madison with possession of cocaine as a Class D felony. Madison filed a motion to suppress both baggies of cocaine, which the trial court denied. A jury trial was held, at which Madison testified in his defense. The jury found him guilty as charged.

Madison now appeals.

## Discussion and Decision

Madison raises two issues on appeal. First, he contends that the trial court erred in admitting the cocaine into evidence at trial because the officers did not have reasonable suspicion to initially stop him.[3] Second, he contends that the evidence is insufficient to support his conviction.

## I. Reasonable Suspicion

Madison first contends that the trial court erred in admitting both baggies of cocaine into evidence at trial because the officers did not have reasonable suspicion to stop him in the first place.[4] The existence of reasonable suspicion is a question of law which is renewed de novo. *State v. Campbell*, 905 N.E.2d 51, 54 (Ind. Ct. App. 2009), *trans. denied*.

---

[3] Madison adds that the trial court erred in denying his motion to suppress. But because Madison appeals following a completed trial, the only issue is whether the trial court erred in admitting the evidence at trial. *See Patterson v. State*, 958 N.E.2d 478, 482 (Ind. Ct. App. 2011).

[4] We note that Madison does *not* argue that he was actually arrested when Officer Knepper pointed his gun at his car, ordered to him exit, and handcuffed him. *See Willis v. State*, 907 N.E.2d 541, 545 (Ind. Ct. App. 2009).

The Fourth Amendment to the United States Constitution prohibits unreasonable searches and seizures by the government.[5] *Patterson v. State*, 958 N.E.2d 478, 482 (Ind. Ct. App. 2011). "Searches performed by government officials without warrants are per se unreasonable under the Fourth Amendment, subject to a 'few specifically established and well-delineated exceptions.'" *Holder v. State*, 847 N.E.2d 930, 935 (Ind. 2006) (quoting *Katz v. United States*, 389 U.S. 347, 357 (1967)). When a search is conducted without a warrant, the State bears the burden of proving that an exception to the warrant requirement existed at the time of the search. *Patterson*, 958 N.E.2d at 482.

One such exception was established in *Terry v. Ohio*, in which the United States Supreme Court held that a police officer may briefly detain a person for investigatory purposes without a warrant or probable cause if, based on specific and articulable facts together with reasonable inferences from those facts, the officer has reasonable suspicion that criminal activity was afoot. 392 U.S. 1, 30 (1968); *State v. Renzulli*, 958 N.E.2d 1143, 1146 (Ind. 2011). Reasonable suspicion is a "'somewhat abstract'" concept that is not readily reduced to a "'neat set of legal rules.'" *Renzulli*, 958 N.E.2d at 1146 (quoting *United States v. Arvizu*, 534 U.S. 266, 274 (2002)). When making a reasonable-suspicion determination, reviewing courts examine the "totality of the circumstances" of each case to see whether the detaining officer has a "particularized and objective basis" for suspecting legal wrongdoing. *Id.* at 1146-47.

---

[5] Although Madison quotes Article 1, Section 11 of the Indiana Constitution, he provides no discernible independent analysis of this issue under the Indiana Constitution and relies largely on Fourth Amendment jurisprudence. We therefore address this issue only under the United States Constitution. In any event, our decision today would be the same under the Indiana Constitution.

Here, Madison argues that the anonymous tip did not supply the officers with reasonable suspicion to stop him because the caller was never identified. Our Supreme Court recently addressed anonymous tips and tips from concerned citizens in *Renzulli*. In *Renzulli*, a person, giving his name and phone number, called 911 around 1:00 a.m. to report a possibly intoxicated driver. The caller identified the car by saying that it just pulled into a BP gas station and was a "blue Jetta." *Renzulli*, 958 N.E.2d at 1145. The caller, who never got close enough to the car to get a license plate number because of safety concerns, later said that it might be a "Volkswagen Passat." *Id.* A police officer immediately went to the BP, saw a blue Volkswagen about to leave, and asked the vehicle to stop. Observing that the driver showed signs of intoxication, the officer had her perform field-sobriety tests, all of which she failed. The officer then arrested the driver for operating while intoxicated.

Although *Renzulli* involves a tip from a concerned citizen and not an anonymous tip, our Supreme Court nevertheless analogized the case with anonymous-tip cases. *Id.* at 1147. Using an anonymous-tip case from the United States Supreme Court, *Alabama v. White*, 496 U.S. 325 (1990), our Supreme Court concluded that in *White*, "the factors upholding the anonymous tip were the officers' observations that validated the information received, substantiating the reasonable suspicion requirement." *Renzulli*, 958 N.E.2d at 1147. Our Supreme Court also relied on an Indiana case involving an unidentified informant, *Bogetti v. State*, 723 N.E.2d 876, 879 (Ind. Ct. App. 2000), which held that a tip will be deemed reliable when an individual provides specific information to police officers, such as a vehicle description. *Renzulli*, 958 N.E.2d at 1148. Based on

7

these decisions, our Supreme Court held that the tip in *Renzulli* was "enough to permit a brief *Terry* stop" because the caller "provided the color and make of the vehicle, at the location the police arrived, at a time of night with minimal vehicular traffic, and importantly, the police officer arrived almost immediately after the 911 dispatch." *Id.* Finding that the caller's tip provided "enough independent reliability," our Supreme Court concluded that it did not need to rely on the defendant's future behavior. *Id.*

Looking at the totality of the circumstances in this case, we find that the officers had reasonable suspicion to conduct an investigatory stop of Madison's green Ford Focus. The officers thought that they were investigating a potentially dangerous situation involving a gun.[6] Although the officers did not know the identity of the caller, they knew that they were to be looking for a male driving a green Ford Focus south on Olive Street. When Officer Knepper arrived in the area, he in fact observed a green Ford Focus, which, notably, was the only other car driving at that time of night. Accordingly, the unidentified caller's report provided sufficient indicia of reliability.

Moreover, the car was speeding and twice turned without signaling. Tellingly, Madison does not challenge the well-settled principle that a police officer may stop a vehicle upon observing a minor traffic violation. *See Reinhart v. State*, 930 N.E.2d 42, 45 (Ind. Ct. App. 2010). Instead, Madison posits that Officer Knepper's "primary reason" for stopping him "was the anonymous tip, not any traffic violation." Appellant's Br. p. 12. But even assuming that Officer Knepper's primary motivation for stopping

---

[6] Madison argues that because the officers ultimately found no gun and later talked to the mother of his children on the scene, who claimed that there was never an altercation between them, the original tip was false and the officers should not have stopped him in the first place. However, reasonable suspicion is based on facts known to the officer at the time of the stop. *See Finger v. State*, 799 N.E.2d 528, 533-34 (Ind. 2003). Here, the officers did not know these facts at the time of the stop.

Madison was to investigate the report that he threatened someone with a gun, because Officer Knepper saw minor traffic violations that Madison does not contest, the *Terry* stop was proper based on the traffic violations alone. *See Parish v. State*, 936 N.E.2d 346, 352 (Ind. Ct. App. 2010), *trans. denied*; *State v. Voit*, 679 N.E.2d 1360, 1363 (Ind. Ct. App. 1997) ("That these officers were specifically watching for Voit and their primary motivation in pulling her over may have been to investigate drug activity does not convert a valid traffic stop into an unconstitutional search and seizure.").

In addition, when Officer Knepper activated his emergency lights, Madison stopped the car but then pulled forward to the side of the street.

Because of the time of night, Madison's green Ford Focus fit the description given by the caller and was the only car driving where the caller said the car would be, Madison committed several minor traffic violations, including speeding, and Madison initially acted suspiciously when he was pulled over, we conclude that the officers had reasonable suspicion to conduct a brief *Terry* stop. During this lawful stop, the officers saw a baggie of crack cocaine in plain view on the driver's side floorboard, which then gave them probable cause to arrest Madison for possessing cocaine. During the booking process, the officers discovered additional cocaine in his buttocks. Because there was reasonable suspicion for the *Terry* stop, the trial court did not abuse its discretion in admitting the cocaine found in Madison's car and on his person into evidence at trial.

## II. Sufficiency of the Evidence

Finally, Madison contends that the evidence is insufficient to support his conviction for Class D felony possession of cocaine. When reviewing the sufficiency of

9

the evidence to support a conviction, we must consider only the probative evidence and reasonable inferences supporting the verdict. *Drane v. State*, 867 N.E.2d 144, 146 (Ind. 2007). We do not assess witness credibility or reweigh the evidence. *Id.* When confronted with conflicting evidence, we consider it most favorably to the trial court's ruling. *Id.* We affirm the conviction unless "no reasonable fact-finder could find the elements of the crime proven beyond a reasonable doubt." *Id.* (quotation omitted). It is not necessary that the evidence overcome every reasonable hypothesis of innocence. *Id.* at 147. The evidence is sufficient if an inference may reasonably be drawn from it to support the verdict. *Id.*

First, Madison argues that the evidence is insufficient to prove that he possessed the cocaine found in the car because the car belonged to an "acquaintance," he had it for only "about an hour" when he was stopped by police, and there was trash and debris on the floor that could have masked the baggie. Tr. p. 190; State's Ex. 4. Notably, Madison cites no case law for this argument and fails to acknowledge the well-settled principle that a conviction for possession of cocaine may rest upon proof of either actual or constructive possession. *See Perry v. State*, 956 N.E.2d 41, 61 (Ind. Ct. App. 2011). Because the evidence shows that Madison was the driver and only occupant of the car and the cocaine was clearly visible in front of the driver's seat, State's Ex. 4, the evidence is sufficient to show that Madison possessed the cocaine found in the car.

Finally, Madison argues that the evidence is insufficient to prove that he possessed the cocaine that was removed from his buttocks because he "adamantly denies that he ever possessed the item." Appellant's Br. p. 15. Madison also points to inconsistencies

10

in Officer Knepper's testimony regarding whether he or the other officer actually removed the cocaine from Madison's buttocks. *See* Tr. p. 107 (Officer Knepper clarifying at trial, "The correct way it happened is it was taken by Deputy Carire and placed into my hand."). Regardless of which officer actually removed the cocaine, the evidence clearly shows that a baggie of cocaine was removed from Madison's buttocks. The evidence is sufficient to show that Madison possessed this baggie of cocaine. We therefore affirm his conviction for possession of cocaine.

Affirmed.

CRONE, J., and BRADFORD, J., concur.