**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



ATTORNEY FOR APPELLANT:

**KIMBERLY A. JACKSON**
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| KENNETH A. LAINHART, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 24A01-1105-CR-241 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE FRANKLIN CIRCUIT COURT
The Honorable J. Steven Cox, Judge
Cause No. 24C01-0909-FB-58

**May 17, 2012**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**BARNES, Judge**

## Case Summary

Kenneth Lainhart appeals his convictions and thirty-year sentence for Class B felony dealing in methamphetamine by manufacturing, Class B felony conspiracy to deal in methamphetamine by manufacturing, Class C felony possession of a handgun with obliterated identification marks, Class D felony maintaining a common nuisance, and Class D felony dumping of controlled substance waste. We affirm.

## Issues

Lainhart raises the following restated issues for our review:

I. whether a search of his residence was unconstitutional;

II. whether the trial court properly permitted a forensic scientist to testify regarding the presence of methamphetamine at Lainhart's property, where a lab report to that effect was excluded from evidence because of a discovery violation by the State;

III. whether the State established an adequate chain of custody for two items of evidence;

IV. whether there is sufficient evidence to sustain Lainhart's convictions; and

V. whether his sentence is inappropriate.

## Facts

Sometime prior to September 14, 2009, the Indiana State Police received a tip that Lainhart and his girlfriend, Tammie Lock, were manufacturing methamphetamine at Lainhart's residence in Franklin County. Because of this tip, officers began searching

records of pseudoephedrine purchases at nearby pharmacies. They discovered that between January 1, 2009, and September 14, 2009, Lainhart purchased pseudoephedrine a total of ten times, staying just within the legal limits for such purchases. However, during this same time period, store logs revealed multiple, barely within legal limits purchases of pseudoephedrine by Tammie, Tammie's daughter Candace Lock, Lainhart's son Marlow, and Marlow's girlfriend Candace Kolb. Sometimes the purchases were very close together; for example, on July 10, 2009, Lainhart, Tammie, and Kolb all purchased the drug in the same town within a matter of twenty-two minutes.

After receiving the tip and reviewing the pseudoephedrine logs, State Trooper Jeremy Franklin and fellow Trooper Pete Gates decided to conduct surveillance of Lainhart's residence from a field adjoining it. While in the field, the troopers observed an air tank that had been altered so that it was consistent with it being used to store anhydrous ammonia, a crucial ingredient of methamphetamine, instead of air. After observing this modified air tank, Trooper Franklin sought and obtained a search warrant for Lainhart's residence on September 14, 2009.

The ensuing search of Lainhart's residence uncovered numerous items commonly associated with methamphetamine manufacturing. Such items included clear tubing, a funnel, rock salt, liquid fire, plastic lids with holes in them, coffee filters, a hollowed-out light bulb, a digital scale, and large plastic containers with white crystal residue in them. Outside the home was a burn pit containing plastic soda bottles, empty lithium battery casings, what appeared to be an empty camp fuel can, other cans that appeared to have

3

contained lye, and empty propane tanks. However, the search failed to uncover any amount of methamphetamine that was capable of being weighed and there was no evidence any of the drug was actually being made at the time of the search. In Lainhart's bedroom under his pillow, officers also found a loaded handgun with an obliterated serial number.

On September 16, 2009, the State charged Lainhart with Class B felony dealing in methamphetamine by manufacturing,[1] Class B felony conspiracy to deal in methamphetamine by manufacturing (with Tammie), Class C felony possession of a handgun with obliterated identification marks, Class D felony maintaining a common nuisance, and Class D felony dumping of controlled substance waste. On November 4, 2009, Lainhart filed a motion for discovery requesting that the State provide "a true copy of any scientific, technical, or laboratory reports in the custody or control of the State of Indiana relating to the investigation of this cause," and also requesting that counsel be provided "with any information or material hereafter acquired that is within the scope of this Motion." App. pp. 40-41. The trial court granted this motion, ordering the State to provide Lainhart's counsel with "any and all items as listed in Defendant's Motion for Discovery within 30 days from the date of signing of this Order." Id. at 43. The State's response to this order did not include any lab reports regarding any testing done of evidence recovered from Lainhart's residence. At no time prior to trial did the State

---

[1] The information for this charge specifically alleged that Lainhart also possessed methamphetamine.

provide to Lainhart any evidence of any testing done that revealed the presence of methamphetamine at his residence.

Lainhart's jury trial was held on March 28 and 29, 2011. Tammie testified against Lainhart, describing their agreement that she would help purchase methamphetamine ingredients, including pseudoephedrine, in exchange for which Lainhart paid her $800 to put towards probation fees that she owed. Tammie also testified that Lainhart manufactured methamphetamine in his driveway with another man named Jeff Shelton. She stated that the last manufacturing of methamphetamine took place about a week before the search.

Also at trial, the State called Hailey Newton, a forensic scientist with the State Police Laboratory, to testify as an expert witness. Newton had been listed by the State pretrial as a witness from the State Police Lab, but not explicitly as an expert witness. Lainhart objected to her testimony because of the State's failure to previously disclose that she was an expert witness. Additionally, the State attempted through Newton to introduce a lab report she had prepared indicating that two items recovered from Lainhart's residence—some pieces of aluminum foil and a coffee filter—had methamphetamine residue on them. Lainhart likewise objected to introduction of the lab report because of the State's failure to previously disclose it to him. The State responded that it had an "open file" policy and that defense counsel could have come to its office, reviewed the files, and discovered the lab report therein. Ultimately, the trial court refused to allow introduction of the lab report itself, but did allow Newton to testify as to

5

her findings reflected in the report—i.e., that the aluminum foil pieces and coffee filter tested positive for the presence of methamphetamine.

The jury found Lainhart guilty of all counts. The trial court sentenced Lainhart to twenty years for both Class B felony convictions, eight years for the Class C felony conviction, and three years for both Class D felony convictions, and ordered all the sentences to run consecutively, which would have been a total of fifty-three years. However, the trial court also found that the offenses constituted a single episode of criminal conduct and, therefore, it capped Lainhart's sentence at thirty years—the advisory sentence for a Class A felony, the next most severe felony above the B felonies of which he was convicted. Lainhart now appeals.

## Analysis

Initially, we note that the State has failed to file a brief in this case. Thus, we apply a less stringent standard of review and may reverse if Lainhart establishes prima facie error. See Willis v. State, 907 N.E.2d 541, 544 (Ind. Ct. App. 2009). Prima facie error is described as "error at first sight, on first appearance, or on the face of it." Id. This rule is not for an appellant's benefit, but to relieve us of the burden of controverting the appellant's arguments. Id. "We are not relieved, however, of our obligation to properly decide the law as applied to the facts of the case." Id. at 544-45.

### I. Search

First, Lainhart challenges the legality of the search of his residence. He contends that probable cause was lacking for the issuance of the search warrant and/or that it was

obtained in part on the basis of an illegal observation from the field next to the residence. As Lainhart concedes, however, he did not object at trial to the introduction into evidence of the materials found pursuant to the search. Failure to make a contemporaneous objection to the introduction of evidence results in waiver of appellate review of the propriety of such evidence. Neukam v. State, 934 N.E.2d 198, 201 (Ind. Ct. App. 2010).

Ordinarily, a defendant may seek to avoid waiver for failure to object if he or she can establish the existence of fundamental error. This is an extremely narrow remedy that is available only when the record reveals a clearly blatant violation of basic and elementary principles, where the harm or potential for harm cannot be denied, and which violation is so prejudicial to the rights of the defendant as to make a fair trial impossible. Jewell v. State, 887 N.E.2d 939, 942 (Ind. 2008). However, our supreme court has held that even if evidence was obtained in violation of constitutional protections against unlawful searches and seizures, its introduction at trial "does not elevate the issue to the status of fundamental error that may be raised for the first time on appeal." Swinehart v. State, 268 Ind. 460, 466-467, 376 N.E.2d 486, 491 (1978); see also Covelli v. State, 579 N.E.2d 466, 471 (Ind. Ct. App. 1991), trans. denied. This is consistent with our supreme court's more recent pronouncement that "the exclusionary rule that prohibits introduction into evidence of unlawfully seized materials is an example of a rule that does not go to the fairness of the trial." Membres v. State, 889 N.E.2d 265, 272 (Ind. 2008). In other words, the products of unlawful searches and seizures are not excluded because they are

unreliable or immaterial or unduly prejudicial evidence, but only because it is an effective means of deterring improper intrusions into the privacy of all citizens. Id.

Although it did not mention or overrule Swineheart, our supreme court has more recently indicated that there may be some occasions when an illegal seizure of evidence may amount to fundamental error. See Brown v. State, 929 N.E.2d 204, 208 (Ind. 2010). However, it appeared to countenance a fundamental error exception for illegally seized evidence only if there is a claim of fabrication of evidence, or willful malfeasance on the part of law enforcement officers, or if "the evidence is not what it appears to be." Id. There are no such claims in this case. As such, we will not consider whether the introduction of evidence seized from Lainhart's residence constituted fundamental error.

## II. Testimony of Forensic Scientist

Next, we address Lainhart's claim that the trial court erred in permitting forensic scientist Newton of the State Police Laboratory to testify as an expert regarding the results of tests she performed indicating the presence of methamphetamine at Lainhart's residence. Lainhart's argument alleges a discovery violation by the State. Trial courts are given wide discretion in discovery matters because they have the duty to promote the discovery of truth and to guide and control the proceedings. Dye v. State, 717 N.E.2d 5, 10-11 (Ind. 1999), cert. denied. We will affirm a trial court's determinations as to violations and sanctions absent clear error and resulting prejudice. Id. at 11. If remedial measures for a discovery violation are warranted, a continuance is usually the proper remedy, but exclusion of evidence may be appropriate if the violation "'has been flagrant

8

and deliberate, or so misleading or in such bad faith as to impair the right of fair trial.'"

Id. (quoting Kindred v. State, 524 N.E.2d 279, 287 (Ind. 1988)).

We also note that although the State has a constitutional duty to disclose any evidence favorable to a defendant, it has no affirmative duty to provide inculpatory evidence. Booker v. State, 903 N.E.2d 502, 505 (Ind. Ct. App. 2009), trans. denied. Thus, resolution of discovery matters related to Newton's testimony is governed by Indiana Trial Rule 26, which does not provide for mandatory disclosures. See id. Here, Lainhart did obtain a discovery order from the trial court that required the State, among other things, to disclose the results of any laboratory testing that had been conducted. The State failed to do so and as a result, the trial court did not allow the State to introduce the lab report itself into evidence. It did, however, permit Newton to testify directly as to the results of her testing, and Lainhart contends that this violated Trial Rule 26's letter and spirit. We disagree.

Trial Rule 26 states with respect to expert witnesses:

> **(B). . .(4)** Trial Preparation: Experts. Discovery of facts known and opinions held by experts, otherwise discoverable under the provisions of subdivision (B)(1) of this rule and acquired or developed in anticipation of litigation or for trial, may be obtained as follows:
>
>> (a)(i) A party may through interrogatories require any other party to identify each person whom the other party expects to call as an expert witness at trial, to state the subject matter on which the expert is expected to testify, and to state the substance of the facts and opinions to which the expert is expected to testify and a summary of the grounds for each opinion.

* * * * *

**(E) Supplementation of responses.** A party who has responded to a request for discovery with a response that was complete when made is under no duty to supplement his response to include information thereafter acquired, except as follows:

(1) A party is under a duty seasonably to supplement his response with respect to any question directly addressed to:

(a) the identity and location of persons having knowledge of discoverable matters, and

(b) the identity of each person expected to be called as an expert witness at trial, the subject-matter on which he is expected to testify, and the substance of his testimony.

Under the plain language of the rule, a party is not required to affirmatively disclose the existence of any expert witnesses to the opposing party. Subsection (B)(4)(a)(i) of Trial Rule 26 clearly places the onus upon the opposing party to ask for the identity of any expert witnesses and permits the opposing party to learn the expected substance of any expert witness's testimony through interrogatories. Thus, in the present case the State committed no discovery violation when it failed to expressly tell Lainhart in discovery that Newton was an expert witness. There also was no request by Lainhart that the State identify any expert witnesses and the expected substance of their testimony, although he clearly was permitted to make such a request.[2]

---

[2] Lainhart does not make a separate argument on appeal that Newton was unqualified to testify as an expert in the field of chemical analysis.

10

Additionally, subsection (E)(1)(b) did not apply in this case. That subsection requires a party to supplement its discovery response if the substance of an expert witness's expected testimony changes. Beauchamp v. State, 788 N.E.2d 881, 894 (Ind. Ct. App. 2003). However, before a duty to supplement arises, there must be a pre-existing discovery response to supplement. Here, as noted, Lainhart never requested a discovery response from the State with respect to expert witnesses, and the State had no unilateral duty to provide such a response. Cf. id. (reversing conviction where State failed to disclose to defendant that expert witness had changed his opinion between time of pretrial deposition and trial regarding cause of injuries to child).

In sum, the State committed no discovery violation with respect to Newton's testimony. Lainhart essentially suggests that the lab report was inextricably intertwined with Newton's testimony paralleling the contents of the report and that exclusion of the lab report also required exclusion of her testimony. However, the trial colloquy regarding the lab report supports a conclusion that the State's failure to provide a copy of the lab report to Lainhart was, while admittedly a glaring omission, inadvertent and not done in bad faith. Moreover, as noted by the trial court, Newton was listed by the State as a witness employed by the State Police Laboratory, but Lainhart made no pretrial effort to determine the substance of her testimony. Lainhart arguably should have been on notice that there had been laboratory testing of items recovered from his residence and could have done more to investigate whether such testing had been done, rather than sitting idly by and hoping that any such testing failed to reveal the presence of

11

methamphetamine. This was a case where the charges alleged possession and manufacture of a controlled substance. It is not a stretch of the imagination to observe that some form of laboratory analysis and/or testimony by a chemist would be a necessary part of the State's case. Under the circumstances, we cannot say the trial court committed clear error in permitting Newton to testify regarding the results of her testing.

### III. Chain of Custody

Lainhart also argues that the State failed to establish an adequate chain of custody for the items tested by Newton, specifically, a coffee filter (State's Exhibit 43) and some aluminum foil pieces (State's Exhibit 44). Lainhart objected to the introduction of these items at trial based on an alleged lack of chain of custody. We review a trial court's ruling on the admissibility of evidence for an abuse of discretion, which occurs only if a decision is clearly against the logic and effect of the facts and circumstances before the court or if it has misinterpreted the law. Bryant v. State, 959 N.E.2d 315, 321 (Ind. Ct. App. 2011). In order for physical evidence to be admissible, the evidence regarding its chain of custody must strongly suggest the exact whereabouts of the evidence at all times. Bell v. State, 881 N.E.2d 1080, 1084 (Ind. Ct. App. 2008), trans. denied. The State must give "'reasonable assurances that the property passed through various hands in an undisturbed condition.'" Id. (quoting Culver v. State, 727 N.E.2d 1062, 1067 (Ind. 2000)). The State does not have to establish a perfect chain of custody, and slight gaps in the chain go to the weight of the evidence, not its admissibility. Id. "There is a presumption of regularity in the handling of exhibits by public officers." Id. The mere

12

possibility of tampering with evidence is insufficient to make a successful challenge to the chain of custody. Id.

Exhibits 43 and 44 originally were collected at Lainhart's residence on September 14, 2009, by State Police Laboratory scientist Carl Sobieralski. When presented with Exhibits 43 and 44 at trial, Sobieralski testified that he recognized the items and that both items had been sealed by him with stickers including the date and his initials. He also testified that the items were then transported "to the laboratories" and that they had both been opened and then resealed by a laboratory analyst. Tr. p. 181.

When Newton testified, she said that recognized both Exhibits 43 and 44 as items she had tested at the laboratory. She testified that she retrieved the items on October 27, 2009, and returned them to an evidence clerk on November 3, 2009. She also testified specifically with respect to Exhibit 43, that "when I received the item, it was sealed at the top with the red evidence tape and that it is still intact today, and I had placed my initials over a seal at the bottom of the bag and that's still intact today." Tr. p. 227. She also testified with respect to both Exhibits that they were in the same condition as when she had last seen them, i.e. on November 3, 2009.

Lainhart seems to argue there are significant gaps in the chain of custody for these items because it was not expressly stated by anyone how they were transported from his residence to the laboratory, and they remained in storage at the laboratory for nearly one-and-a-half years before trial. We cannot find these alleged gaps in the chain of custody to be fatal. First, we note that the most crucial period for the chain of custody of these items

13

was between September 14, 2009, when they were first seized, and November 3, 2009, when Newton returned them to storage at the laboratory after testing. After that time, any tampering of the items would not have had any affect on Newton's test results, which is the main importance of the items. Second, between Sobieralski and Newton's testimony that the seals and labels were placed on the items at the crime scene and that the seals were intact when Newton went to test the items, there is a sufficient chain of custody during that time period. Even if it is unknown precisely who transported the items to the laboratory or when, there is sufficient indication that the items were not tampered with between the time of Sobieralski's collection and Newton's testing. We conclude the trial court did not abuse its discretion in overruling Lainhart's chain of custody objection to the introduction of State's Exhibits 43 and 44.

## IV. Sufficiency of the Evidence

Lainhart argues that there is insufficient evidence to support his convictions.[3] We neither reweigh evidence nor judge witness credibility when assessing the sufficiency of the evidence supporting a conviction. Bailey v. State, 907 N.E.2d 1003, 1005 (Ind. 2009). We will consider only the evidence supporting the judgment and any reasonable inferences flowing from that evidence. Id. "We will affirm if there is substantial evidence of probative value such that a reasonable trier of fact could have concluded the defendant was guilty beyond a reasonable doubt." Id.

---

[3] Part of Lainhart's argument on this point is premised on exclusion of either Exhibits 43 and 44 or of Newton's testimony regarding her testing of those items. Having found those items and Newton's testimony were properly admitted, we will not address that part of Lainhart's argument.

Lainhart contends that during trial, no one identified him in the courtroom as the person who committed these crimes. We disagree. "Even when a defendant is present at trial, witnesses need not point to the defendant to establish the requisite identification." Iseton v. State, 472 N.E.2d 643, 646 (Ind. 1984). For example, referring to "the defendant" as the person who committed the crime is sufficient identification evidence. Id. at 647 (citing Preston v. State, 259 Ind. 353, 287 N.E.2d 347 (1972)). Here, before describing their ongoing conspiracy to manufacture methamphetamine, Lainhart's girlfriend Tammie was asked whether she knew "the defendant" and what name she knew him by. Tammie responded that she did know the defendant and knew him as "Kenny Lainhart." Tr. p. 245. This alone was sufficient to permit the jury to conclude that the Kenneth Lainhart sitting in the courtroom was the person who committed the offenses with Tammie and from whose residence the State Police recovered the evidence in this case. The State also introduced into evidence Lainhart's driver's license that was found at the residence. The jury could have compared the photograph on the license with the person in the courtroom and concluded that they were one and the same person. There is sufficient evidence to support Lainhart's convictions.

## V. Sentence

Finally, Lainhart contends that his thirty-year sentence is inappropriate under Indiana Appellate Rule 7(B) in light of his character and the nature of the offenses. Although Rule 7(B) does not require us to be "extremely" deferential to a trial court's sentencing decision, we still must give due consideration to that decision. Rutherford v.

15

State, 866 N.E.2d 867, 873 (Ind. Ct. App. 2007). We also understand and recognize the unique perspective a trial court brings to its sentencing decisions. Id. "Additionally, a defendant bears the burden of persuading the appellate court that his or her sentence is inappropriate." Id.

The principal role of Rule 7(B) review "should be to attempt to leaven the outliers, and identify some guiding principles for trial courts and those charged with improvement of the sentencing statutes, but not to achieve a perceived 'correct' result in each case." Cardwell v. State, 895 N.E.2d 1219, 1225 (Ind. 2008). We "should focus on the forest—the aggregate sentence—rather than the trees—consecutive or concurrent, number of counts, or length of the sentence on any individual count." Id. Whether a sentence is inappropriate ultimately turns on the culpability of the defendant, the severity of the crime, the damage done to others, and myriad other factors that come to light in a given case. Id. at 1224. When reviewing the appropriateness of a sentence under Rule 7(B), we may consider all aspects of the penal consequences imposed by the trial court in sentencing the defendant, including whether a portion of the sentence was suspended. Davidson v. State, 926 N.E.2d 1023, 1025 (Ind. 2010).

As noted, the trial court imposed maximum, consecutive sentences for all of the crimes of which Lainhart was convicted, which would have totaled fifty-three years. However, pursuant to the limitation in Indiana Code Section 35-50-1-2(c) for consecutive sentences imposed for a single episode of criminal conduct not involving "crimes of violence," the trial court capped Lainhart's sentence at thirty years, the advisory sentence

16

for a Class A felony. Still, it would appear Lainhart effectively received a "maximum" sentence, as it is the maximum sentence he statutorily could have received for these crimes. Although maximum sentences generally should be reserved for the "worst" offenders and offenses, this refers generally to a class of offenders and offenses that warrant maximum punishment and may encompass a considerable variety of offenders and offenses. Buchanan v. State, 767 N.E.2d 967, 973 (Ind. 2002).

Regarding the nature of the offenses, there was evidence that Lainhart repeatedly conspired to and actually did produce methamphetamine at his residence over a period of several months, if not longer. Moreover, according to Tammie, Lainhart was the leader of this operation. This process resulted in dangerous waste that he dumped at the site. He also possessed a firearm whose identifying serial number had been obliterated. We see nothing about the offenses that would warrant a reduction in Lainhart's sentence.

As for Lainhart's character, he has a very lengthy criminal history. Lainhart, who is now forty-five years old, first had legal troubles in 1980, when he was adjudicated delinquent for theft, possession of marijuana, and possession of alcohol by a minor.[4] As an adult, Lainhart has amassed twelve misdemeanor convictions and eight felony convictions, aside from the instant offenses. Most of these convictions have been substance-abuse related, including other charges of possessing or manufacturing methamphetamine or its precursors. He also has gun-related convictions for carrying a

---

[4] At sentencing, Lainhart claimed that he only had a juvenile adjudication for possession of paraphernalia. The probation officer who prepared the presentence report stated that the information in the report had been obtained from the trial court's records.

17

handgun without a license and criminal recklessness with a deadly weapon and convictions for intimidation, resisting law enforcement, and battering a person under fourteen years old. The weight to be given a criminal history varies based upon the gravity, nature, and number of prior offenses as they relate to the current offenses for which a defendant is being sentenced. Bryant v. State, 841 N.E.2d 1154, 1156-57 (Ind. 2006). Here, Lainhart has been involved in some sort of criminal activity nearly constantly since the mid 1980's until the time of the present offenses, and that activity has been similar in nature to what he did in this case.

Moreover, Lainhart has evidenced disrespect for the law, outside of his criminal history. Lainhart committed these offenses, as well as three additional methamphetamine offenses that were tried separately, while he was out on bond for an intimidation charge. Lainhart also failed to appear for sentencing on the intimidation charge in May 2010 and was held in contempt for failing to do so. In sum, the extensive evidence of poor character on Lainhart's part, coupled with his repeated engagement in the dangerous process of manufacturing methamphetamine, convinces us that he and/or his offenses fall within the class deserving of maximum punishment.

Lainhart nonetheless argues that a reduction in his sentence is warranted because of significant health issues that he faces, because his substance abuse problems arose out of an automobile accident he was involved in at age eleven, and because of his claim that he has been sober since leaving a rehabilitation center in June 2010. As for his claim of sobriety, that is to be applauded if true and permanent, but it does not minimize the fact

18

that he engaged in criminal activity essentially continuously for twenty-five or thirty years previously. As for his health problems and automobile accident, the simple fact is that many persons suffer from unfortunate health issues or trauma but do not resort to a life of substance abuse-related crime thereafter. Lainhart was given multiple warnings in the past that his behavior was unacceptable to society and multiple opportunities to change that behavior, but he did not take advantage of them. At this point, given the severity of the offenses here and Lainhart's repeated criminal conduct, we cannot say that a sentence of thirty years is inappropriate.

## Conclusion

Lainhart's claim of an unconstitutional search was not preserved for this appeal. The trial court did not err in permitting Newton to testify about the results of laboratory testing she performed or in permitting the State to introduce into evidence the items that she had tested. There was sufficient evidence to support Lainhart's convictions, and his thirty-year sentence is not inappropriate. We affirm.

Affirmed.

VAIDIK, J., and MATHIAS, J., concur.